IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**WEST VIRGINIA RIVERS**
**COALITION, INC.,**

      **Plaintiff,**

v.                                                Civil Action No. 2:24-cv-00701

**THE CHEMOURS COMPANY FC, LLC,**

      **Defendant.**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

1. This is a citizen suit for declaratory and injunctive relief as well as for civil penalties against Defendant Chemours Company FC, LLC ("Chemours"), for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. ("Clean Water Act" or "CWA") at the Chemours Washington Works Plant in Wood County, West Virginia.

2. As detailed below, Plaintiff alleges that Chemours has discharged and continues to discharge pollutants into waters of the United States in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342. As a result, Chemours has violated and continues to violate "an effluent standard or limitation." 33 U.S.C. §§ 1365(f)(1), (f)(7). Plaintiff seeks declaratory and injunctive relief, as well as civil penalties, for those violations pursuant to Section 505 of the CWA. 33 U.S.C. §§ 1365(a), 1319(d).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (CWA citizen suit provision).

1

4. On April 26, 2024, Plaintiff mailed notice of the violations and its intent to file suit in letters addressed to the Defendant, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

5. More than sixty (60) days have passed since the notice letters were sent. On information and belief, neither EPA nor WVDEP have commenced or diligently prosecuted a civil or criminal action to redress Chemours's violations. Moreover, neither EPA nor WVDEP has commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to adequately redress the violations within the notice letters.

6. Venue in the Southern District of West Virginia is proper pursuant to Section 505 of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the CWA violations are located in this District.

7. Chemours is a West Virginia corporation engaged in the business of chemical manufacturing. Chemours holds WV/NPDES Permit No. WV0001279 for its "Chemours Washington Works" chemical plant in Washington, West Virginia.

8. Chemours is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

9. Plaintiff West Virginia Rivers Coalition, Inc., is a nonprofit organization incorporated in West Virginia. It has approximately 1,000 members. It works to promote the overall health of West Virginia's waters and their downstream benefits. It not only seeks preservation of high-quality waters but also the improvement of waters that should be of higher quality. West Virginia Rivers Coalition, Inc., is dedicated to conserving and restoring West Virginia's exceptional rivers and streams.

10. Plaintiff's member Charlise Robinson lives near and views the Ohio River at or around the Washington Works Plant and is offended by it because of its contamination by Chemours. She does not use the Ohio River for recreation because of Chemours's unlawful discharges, and her drinking water from the Lubeck water system is contaminated due to Chemours's historical and current operations. Additionally, Plaintiff's member Eric Engle used to fish the Ohio River downstream of Chemours and otherwise recreate in the River, but has minimized his use of the River for such purposes after understanding the extent of Chemours's pollution of the River with PFAS and other harmful substances. He too lives and works near the River at or around the Washington Works Plant and his enjoyment of the River is diminished because of Chemours' unlawful pollution.

11. The Ohio River receives discharges from the Chemours Washington Works Plant directly from Outlets 001, 002, and 005, as well as indirect discharges because the Ohio River is very close to the discharge point into the unnamed tributary of Page Run at Outlet 006. The use and enjoyment of the Ohio River by Plaintiff's members, including Ms. Robinson and Mr. Engle, are adversely affected by Chemours's unlawful discharges.

12. As a result of Chemours's unlawful discharges, Plaintiff's members' environmental, aesthetic, and recreational interests are adversely affected. If those unlawful discharges ceased as a result of relief ordered by this Court, then the harm to the interests of Plaintiff's members would be redressed. An injunction would redress Plaintiff's members' injuries by preventing future violations of the limits in Chemours's permits. Civil penalties would deter future violations.

13. At all relevant times, Plaintiff was and is a "person" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

14. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), provides that "any citizen may commence a civil action . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

15. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter" for purposes of the citizen suit provision to mean, among other things, an unlawful act under Section 301(a) of the CWA, 33 U.S.C. § 1311(a), or a "permit or condition thereof" issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342(a). 33 U.S.C. §§ 1365(f)(1), (f)(7).

16. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States, except in compliance with the terms and conditions of a permit, including National Pollution Discharge Elimination System ("NPDES") permits issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit-issuing authority, such as WVDEP, may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

18. The Administrator of EPA authorized WVDEP, pursuant to Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), to issue NPDES permits on May 10, 1982. 47 Fed. Reg. 22363. The applicable West Virginia law for issuing NPDES permits is the Water Pollution Control Act, W. Va. Code § 22-11-1, et seq. Accordingly, NPDES permits issued by WVDEP are subject to the

prohibitions and limitations described above under Sections 301 and 402 of the CWA, and to enforcement under Section 505 of the CWA.

19. Any discharge that exceeds the effluent limitations of an applicable NPDES permit constitutes an unlawful discharge in violation of Sections 301 and 505 of the CWA.

20. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties.

21. Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

22. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation thereof issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, "shall be subject to a civil penalty" payable to the United States of up to $25,000 per day for each violation.

23. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Public Law 114-74, this Court may assess a civil penalty of up to $66,712 per day for each violation that occurred after November 2, 2015. 40 C.F.R. § 19.4; *Civil Monetary Penalty Inflation Adjustment*, 88 Fed. Reg. 89,309 (Dec. 27, 2023).

## FACTUAL BACKGROUND

24. At all relevant times, Chemours has held WV/NPDES Permit No. WV0001279, which regulates discharges from Chemours's "Chemours Washington Works Plant," a large chemical facility in Wood County, West Virginia.

25.　　WV/NPDES Permit No. WV0001279 was issued on July 30, 2018. It became effective on September 1, 2018, and was set to expire on July 29, 2023. On January 27, 2023, Chemours requested an extension for its permit renewal application until February 24, 2023. That request was granted by the WVDEP on the same day. Chemours submitted its permit renewal application by February 24, 2023. Thereafter, WVDEP purported to administratively extend WV/NPDES Permit No. WV001279.

26.　　WV/NPDES Permit No. WV0001279 requires compliance with limits on perfluorooctanoic acid ("PFOA") and hexafluoropropylene oxide-dimer acid (also known as HFPO-DA or GenX) (hereinafter, collectively, "PFAS Parameters") at Outlets 001, 002, 005, and 006, as set out in Part A of the permit. However, Chemours was given a compliance schedule for these parameters at these Outlets until January 1, 2022, at which time more stringent limits went into place, as summarized in the table below:

Case 2:24-cv-00701　　Document 1　　Filed 12/05/24　　Page 7 of 12 PageID #: 7

| Outlet | Parameter | Type of Limit | 9/1/2018 to 12/31/21 (2018 Permit & Permit Modification No. 5) | Limits Effective 1/1/22 (2018 Permit & Permit Modification No. 5) | Units |
|---|---|---|---|---|---|
| 001 | HPFO-DA | Daily Maximum | Report Only | 2 | ug/L |
| | | Monthly Average | Report Only | 1.4 | ug/L |
| 002 | HPFO-DA | Daily Maximum | 32 | 2.3 | ug/L |
| | | Monthly Average | 9 | 1.4 | ug/L |
| | PFOA | Daily Maximum | 18 | 3.3 | ug/L |
| | | Monthly Average | 18 | 2 | ug/L |
| 005 | HPFO-DA | Daily Maximum | 43 | 2.3 | ug/L |
| | | Monthly Average | 15 | 1.1 | ug/L |
| | PFOA | Daily Maximum | 2 | 0.7 | ug/L |
| | | Monthly Average | 2 | 0.3 | ug/L |
| 006 | HPFO-DA | Daily Maximum | Report Only | 0.204 | ug/L |
| | | Monthly Average | Report Only | 0.14 | ug/L |

The permit requires weekly monitoring for the PFAS parameters.

27.    The PFOA limits at Outlets 002 and 005 in Chemours's 2018 NPDES permit were based on EPA's 2016 human health advisory level of 70 parts per trillion (ppt) for PFOA and PFOS combined. The HFPO-DA limits at those Outlets were based on North Carolina's health goal of 140 ppt for that chemical. In June 2022, EPA established updated Lifetime Drinking Water Health Advisories for PFOA and HFPO-DA, which identify the concentration of chemicals in drinking water at or below which adverse health effects are not anticipated to occur. EPA's newest health advisories are 0.004 ppt or ng/L for PFOA and 10 ppt or ng/L for HFPO-DA chemicals. 87 Fed. Reg. 36848 (June 21, 2022). On April 26, 2024, EPA issued a final PFAS National Primary Drinking Water Regulation. 40 C.F.R. §§ 141, 142. Therein, EPA Set Maximum Contaminant

7

Levels ("MCLs") for PFOA at 4 ppt or ng/L and HFPO-DA at 10 ppt or ng/L. According to a report authored by Downstream Strategies, the Ohio River at the Chemours Washington Works Plant is already impaired for PFOA and HFPO-DA based on EPA's MCLs for those parameters.

28. The PFAS Parameters are "forever chemicals" because they do not naturally break down and can accumulate in the environment and in the blood and organs of people and animals. Research has shown that exposure to PFAS Parameters is linked to cancer, liver damage, birth defects, and other health problems.

29. WV/NPDES Permit WV0001279 also requires compliance with limits on pH levels at Outlet 002, as set out in Part A of the permit. The permit limits for pH levels are 6 S.U. minimum and 9 S.U. maximum. The permit requires continuous monitoring for pH levels.

30. WV/NPDES Permit WV0001279 also requires compliance with net limits on total suspended solids ("TSS") at Outlet 205, as set out in Part A of the permit. The permit limits for TSS were 3878 lbs/day maximum daily and 1197 lbs/day average monthly until November 13, 2020, after which time the limits are 3952 lbs/day maximum daily and 1217 lbs/day average monthly. The permit requires weekly monitoring for TSS.

31. Outlet 001 discharges groundwater, filter backwash water, non-contact cooling water, and stormwater into the Ohio River at River Mile 190.09.

32. Outlet 002 discharges stormwater, boiler blowdown, steam condensate, process wastewater, and non-contact cooling water into the Ohio River at River Mile 190.45.

33. Outlet 005 discharges non-contact cooling water and stormwater, process wastewater, sanitary wastewater, and Dry Run landfill leachate into the Ohio River at River Mile 190.81. Outlet 205 is an internal outlet that discharges cooling water, stormwater runoff, process water, and other wastewater into Outlet 005.

34. Outlet 006 discharges non-contact cooling water, stormwater, and steam condensate into an unnamed tributary of Page Run, which enters the Ohio River at River Mile 190.05.

35. In its monthly discharge monitoring reports, Chemours has reported numerous violations of its permit limits for PFOA, HFPO-DA, pH levels, and TSS at Outlets 001, 002, 005, 006, and 205 on the dates shown in Appendix A, which is incorporated by reference into this Complaint as if fully set forth within.

36. On April 26, 2023, EPA issued an Administrative Compliance Order on Consent (the "Consent Order") to Chemours regarding Chemours's PFAS Parameters violations. The Consent Order ordered Chemours to take a variety of corrective measures to address pollution from PFAS in stormwater and effluent discharges. Specifically, as relevant here, the Consent Order required Chemours, within 120 days of the Order, to submit an Alternatives Analysis and Implementation Plan to ensure compliance with numeric effluent limits for PFOA and HFPO-DA. After EPA reviews and approves the Plan, the Consent Order requires Chemours to implement it according to an approved schedule. Chemours submitted its Alternatives Analysis and Implementation Plan to EPA in August 2023. Over a year has passed and EPA has yet to formally act on Chemours's submitted Plan.

37. The Consent Order was brought under 33 U.S.C. § 1319(a). It does not preclude this citizen suit because it was issued without prior public notice and opportunity for comment, did not commence an administrative penalty proceeding under 33 U.S.C. § 1319(g)(6), did not impose any monetary penalties or recover Chemours's economic benefit from its noncompliance, and is not being diligently prosecuted.

38. EPA has taken no further enforcement action regarding Chemours's violations as of the date of this Complaint, and Chemours's operative permit includes final numeric effluent limits for the PFAS Parameters, pH levels, and TSS without any schedules of compliance.

### **CLAIM FOR RELIEF**
### **(CWA Violations)**

39. Plaintiff incorporates by reference all allegations contained in paragraphs 1 though 38, *supra*.

40. Since at least July 2019, Chemours has discharged and continues to discharge pollutants from point sources, *i.e.*, Outlets 001, 002, 005, and 006 of the "Chemours Washington Works Plant," into the Ohio River or its tributaries, in excess of the effluent limits in WV/NPDES Permit No. WV0001279.

41. The Ohio River is a navigable water of the United States within the meaning of 33 U.S.C. § 1362(7) and 40 C.F.R. § 120.2(a)(3). The unnamed tributary of Page Run is a relatively permanent stream that feeds into the Ohio River and is thus also a water of the United States within the meaning of 33 U.S.C. § 1362(7) and 40 C.F.R. § 120.2(a)(3).

42. Pursuant to § 505(f) of the CWA, 33 U.S.C. § 1365(f), the discharge of pollutants in excess of permit limits is a violation of an "effluent standard or limitation" under § 301 of the CWA. As such, Chemours's past and continuing violations of the effluent limitations for the PFAS parameters, pH levels, and TSS are subject to enforcement through the citizen suit provision of § 505(a)(1) of the CWA. 33 U.S.C. § 1365(a)(1).

43. Chemours is in continuing and/or intermittent violation of the CWA as a result of its exceedance of effluent limits in WV/NPDES Permit No. WV0001279 and is subject to enforcement through the citizen suit provision in § 505(a)(1) of the CWA. 33 U.S.C. § 1365(a)(1).

44. Pursuant to sections 309(d) of the CWA, 33 U.S.C. § 1319(d), Chemours is liable for civil penalties up to $66,712 per day for each CWA violation that occurred after November 2, 2015. *See* 40 C.F.R. § 19.4; 88 Fed. Reg. 89,309.

45. Chemours should be subject to an injunction under the CWA, ordering it to cease its permit violations.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

1. Declaring that Chemours has violated and is in continuing violation of the Clean Water Act;

2. Enjoining Chemours from operating the "Chemours Washington Works Plant" in a manner that would result in further violations of WV/NPDES Permit No. WV0001279;

3. Compelling Chemours to immediately comply with all terms and conditions, including the effluent limitations on PFOA, HFPO-DA, pH, and TSS, of WV/NPDES Permit No. WV0001279;

4. Compelling Chemours to pay an appropriate civil penalty of up to $66,712 per day for each CWA violation;

5. Ordering Chemours to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its PFOA, HFPO-DA, pH, and TSS violations, and to restore the environment to its prior condition;

6. Awarding Plaintiff its attorneys' fees, expert witness fees, and all other reasonable costs and expenses incurred in the pursuit of this action; and,

7. Granting any other such relief as this Court deems just and proper.

Date:  December 5, 2024                    Respectfully submitted,

**/s/ *Amanda Demmerle***
AMANDA DEMMERLE (W. Va. Bar No. 13930)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 11571
Charleston, WV 25339
(757) 650-2774
ademmerle@appalmad.org

DEREK TEANEY (W. Va. Bar No. 10223)
APPALACHIAN MOUNTAIN ADVOCATES, INC.
P.O. Box 507
Lewisburg, WV 24901
(304) 646-1182
dteaney@appalmad.org

*Counsel for Plaintiff*