IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WEST VIRGINIA RIVERS COALITION, INC.,

        Plaintiff,

  v.                                      Civil Action No. 2:24-cv-00701

THE CHEMOURS COMPANY FC, LLC,

        Defendant.

## PLAINTIFF'S FIVE-PAGE BRIEF IN RESPONSE TO THE COURT'S ORDER DURING THE PRELIMINARY INJUNCTION HEARING

**DEREK TEANEY (WVBN 10223)**
**AMANDA DEMMERLE (WVBN 13930)**
**APPALACHIAN MOUNTAIN ADVOCATES, INC.**
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 646-1182
Email: dteaney@appalmad.org
       ademmerle@appalmad.org

**JAMES M. HECKER (pro hac)**
**DANIEL C. SNYDER (pro hac)**
**PUBLIC JUSTICE**
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Email: jhecker@publicjustice.net
       dsnyder@publicjustice.net

**Counsel for Plaintiff**

I.  **When the Fourth Circuit Conformed Its Four-Factor Test for Injunctive Relief to its View of <u>Winter</u>, It Did Not Create Any New Difference Between the Standards for Granting Preliminary Injunctions and Permanent Injunctions.**

In 2009, the Fourth Circuit held that the preliminary injunction standard it had applied for decades "st[ood] in fatal tension with the Supreme Court's 2008 decision in <u>Winter[ v. Natural Resources Defense Council</u>, 555 U.S. 7 (2008)]." <u>Real Truth About Obama, Inc. v. Fed. Election Comm'n</u>, 575 F.3d 342, 346 (4th Cir. 2009), <u>vacated on other grounds</u>, 559 U.S. 1089 (2010), <u>adhered to in part sub nom.</u> 607 F.3d 355 (4th Cir. 2010). Specifically, the Fourth Circuit identified four inconsistencies between <u>Winter</u> and the Circuit's prior preliminary injunction standard from <u>Blackwelder Furniture Co. v. Statesville v. Seilig Manufacturing Co.</u>, 550 F.2d 189 (4th Cir. 1977):

1. <u>Winter</u> requires a clear showing of likelihood of success in every case, whereas the <u>Blackwelder</u> test only considered the likelihood of success prong <u>after</u> balancing the hardships;

2. <u>Winter</u> requires likely irreparable harm absent preliminary relief, whereas the <u>Blackwelder</u> test had previously only required that the harm to the plaintiff outweigh the harm to the defendant;

3. <u>Winter</u> expressly emphasized the importance of the public interest requirement, whereas the public interest factor had previously been given short shrift in Fourth Circuit cases; and

4. <u>Winter</u> requires that each of the four factors be satisfied, whereas the <u>Blackwelder</u> standard had allowed a strong showing on one factor to compensate for a failure to establish another.

<u>Real Truth</u>, 575 F.3d at 346–47. Thus, <u>Real Truth</u> marks a shift in the injunction standard in the Fourth Circuit by clarifying that all four elements of the <u>Winter</u> test must be satisfied independently.

Long before <u>Winter</u>, however, the Supreme Court held that "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." <u>Amoco Prod. Co. v. Vill. of Gambell</u>, 480 U.S. 531, 546, n. 12 (1987). <u>Winter</u> reiterated that principle, as well as that the other three factors—irreparable harm, balance of the equities, and public interest—are "pertinent in

1

assessing the propriety of any injunctive relief, preliminary or permanent." 555 U.S. at 32. Consequently, while Real Truth adopted the Winter test, it did not create any new difference between the standards for preliminary and permanent injunctions. Instead, it reiterated the important role of the public interest factor for both tests—district courts must "pay particular regard" to the public interest requirement in deciding whether to issue a preliminary injunction. Id. at 347 (emphasis in original) (quoting Winter, 555 U.S. at 24).

As for irreparable harm, the standards are the same for either a preliminary injunction or a permanent injunction. Winter, 555 U.S. at 32; see also Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth., 771 F.3d 201, 207 (4th Cir. 2014) (recognizing similarity of tests for preliminary and permanent injunctions); Bethesda Softworks, L.L.C. v. Interplay Ent. Corp, 452 F. App'x 351, 354–55 (4th Cir. 2011) ("Despite the differences between preliminary and permanent injunctive relief, the same equitable principles undergird the courts' authority in each posture.") (unpublished opinion). To the extent that there is any space between the two standards it is merely this: for a preliminary injunction, the movant must show "that it is likely to be irreparably harmed," Real Truth, 575 F.3d at 347, and for a permanent injunction the movant must show "that is has suffered an irreparable injury," SAS Inst., Inc. v. World Programming Ltd., 874 F.3d 370, 385 (4th Cir. 2017), i.e., likely vs. actual. But the Fourth Circuit, albeit in an unpublished decision, found this distinction between likely and actual was not a meaningful one. Bethesda Softworks, 452 F. App'x at 345–46.

**II.     In the CWA Context, the Standards for Irreparable Harm Are the Same for Preliminary and Permanent Injunctive Relief, and Irreparable Harm to Plaintiff or the Public Is Measured in Terms of the Substantive Policy of the Underlying Statute.**

In environmental cases, both the Fourth Circuit and this Court assess irreparable harm to the plaintiff or the public in the context of injunctive relief, whether preliminary or permanent. In Hazardous Waste Treatment Council v. State of S.C., 945 F.2d 781, 788 (4th Cir. 1991), the Fourth Circuit evaluated whether "the absence of a new facility to handle waste, including out-of-state waste,

2

would create irreparable harm, not only to [the plaintiff organization] but to the public, because of the possible creation of additional untreated waste." Similarly, in Courtland Co. v. Union Carbide Corp., No. 2:19-cv-00894, 2024 WL 4339600, at *5–6 (S.D. W. Va. Sept. 27, 2024), this Court evaluated whether plaintiff "or the public has suffered an irreparable injury."

This conclusion is consistent with the principle that where, as here, Congress has granted citizens a right of action and the plaintiff has established jurisdiction (i.e., standing), it may invoke the general public interest in support of its claims for injunctive relief. Warth v. Seldin, 422 U.S. 490, 501 (1975); Sierra Club v. Morton, 405 U.S. 727, 740 n.15 (1972). In a CWA citizen suit, plaintiffs may invoke "[t]he general public interest in clean waterways" to establish irreparable harm. Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 73 (3d Cir. 1990) (citing Warth v. Seldin). Thus, the scope of cognizable irreparable harm from Chemours's discharges includes not only harm to Lubeck's drinking water system, where Plaintiff's member Ms. Robinson obtains her household water, but also harm to other public water systems downstream (such as those in Cincinnati and Louisville), and to the Ohio River itself.

To establish irreparable harm in the citizen suit context, the plaintiff must show that the violation is not merely technical and will probably continue unless the defendant's activity is enjoined. See Bloodgood v. Garraghty, 783 F.2d 470, 476 (4th Cir. 1986) (to obtain a preliminary injunction, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future" (internal quotation marks omitted)). Absent congressional intent otherwise, irreparable harm will not be presumed upon every violation of a federal environmental statute in actions for injunctive relief, because presuming harm in that scenario would improperly "focus[] on the statutory procedure rather than on the underlying substantive policy the process was designed to effect." Amoco, 480 at 544–45. As pertinent here, the lesson from Amoco is that CWA plaintiffs "must prove more than procedural permit violations in

3

order to secure an injunction." City of N.Y. v. Anglebrook Ltd. P'ship, 891 F. Supp. 908, 926 (S.D.N.Y. 1995), aff'd, 58 F.3d 35 (2d Cir. 1995).

"But in distinguishing between procedural and substantive violations, courts look to the substantive policy of the [CWA], which is, here, the protection and maintenance of our Nation's navigable waterways." Id. Specifically, the Supreme Court has stated that achieving water quality standards is "one of the [CWA's] central objectives." Arkansas v. Oklahoma, 503 U.S. 91, 106 (1992). "[A]ny violation of . . . water quality-based effluent limitations causes some degree of harm to the water quality of the receiving body of water." PIRG v. Powell Duffryn Terminals, Inc., 720 F. Supp. 1158, 1162 (D.N.J. 1989). Thus, because it is "preferable to base the determination of irreparable harm on the statutes that actually form the basis of plaintiffs' claims," Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1257 (10th Cir. 2003), the irreparable harm to the Ohio River and its drinking water resources in this case is the exact type of harm the CWA is intended to prevent.

Federal regulations require States to carry out the CWA policy of protecting water quality by translating water quality standards into end-of-pipe discharge limits in each NPDES permit. 40 C.F.R. § 122.44(d)(1). When it issued Chemours's NPDES permit, WVDEP determined that the HFPO-DA limits were necessary to protect a narrative water quality standard that protects designated uses in the Ohio River, which includes safe drinking water. ECF No. 7-9 at 14; Stipulation, ECF No. 55 ¶¶ 4–5. Chemours's continuing violations of its water quality–based permit limits for HFPO-DA are therefore strong evidence of irreparable harm, as federal courts have repeatedly and consistently found. See ECF No. 45 at 2 (compiling cases).

Conversely, no court has held that violating a specific public health standard from a different environmental statute is necessary to demonstrate irreparable harm in a CWA case. In Idaho Conservation League v. Atlanta Gold Corp., 879 F. Supp. 2d 1148 (D. Idaho 2012), the defendant repeatedly violated its CWA permit limit for arsenic, but there was "no evidence that [the defendant's]

4

discharges" contributed "to a serious public health problem." Id. at 1160. Nevertheless, the court held the absence of a serious public health problem was irrelevant to the irreparable harm because "[h]arm to the environment exists, even if municipal suppliers eventually remove the toxins from the water before it enters household taps." Id. Accordingly, "[i]t is not necessary for [a plaintiff environmental organization] to establish that an immediate and catastrophic threat to public health exists before a federal court can step in and order a defendant to stop its illegal discharges." Id. In that vein, preliminary injunctions need not be last-minute remedies. Mountain Valley Pipeline v. 6.56 Acres of Land, 915 F.3d 197, 217 (4th Cir. 2019).

The courts have also held harm to a plaintiff's aesthetic, recreational, and environmental interests constitutes irreparable harm in CWA cases, without proof of harm to public health. Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs, 826 F.3d 1030, 1037–38 (8th Cir. 2016); OVEC v. Fola Coal Co., LLC, CV 2:13-5006, 2015 WL 5972430, at *3 (S.D.W. Va. Oct. 14, 2015); OVEC v. Hobet Min., LLC, 723 F. Supp. 2d 886, 924 (S.D. W. Va. 2010). For example, in Sierra Club v. U.S. Army Corps of Eng'rs, 645 F.3d 978, 995–96 (8th Cir. 2011), the Eighth Circuit upheld a preliminary injunction halting construction of a coal-fired power plant permitted under § 404 of the CWA, which plaintiffs argued failed to comply with environmental laws. The court held that the district court did not err in finding irreparable harm where the Sierra Club, through member declarations, showed that noise and light pollution, increased dust and mud, and disturbance to wildlife from construction impaired members' cognizable interests in studying, using, and enjoying the area. Id. at 994–96; see also Sierra Club v. Trump, 929 F.3d 670, 706 (9th Cir. 2019) ("Environmental injuries have been held sufficient in many cases to support injunctions[.]"); Sierra Club v. Franklin County Power of Ill., LLC, 546 F.3d 918, 936 (7th Cir. 2008) (recognizing risk of increased pollution establishes likely irreparable harm to plaintiff environmental group).

DATED: May 30, 2025

Respectfully submitted,

| | |
|---|---|
| **/s/ Derek Teaney** | |
| DEREK TEANEY (WVBN 10223) | JAMES M. HECKER (pro hac) |
| AMANDA DEMMERLE (WVBN 13930) | DANIEL C. SNYDER (pro hac) |
| APPALACHIAN MOUNTAIN ADVOCATES, INC. | PUBLIC JUSTICE |
| P.O. Box 507 | 1620 L St NW, Suite 630 |
| Lewisburg, WV 24901 | Washington, DC 20036 |
| Telephone: (304) 646-1182 | Telephone: (202) 797-8600 |
| Email:  ademmerle@appalmad.org | Email: jhecker@publicjustice.net |
|            dteaney@appalmad.org |            dsnyder@publicjustice.net |

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**WEST VIRGINIA RIVERS**
**COALITION, INC.,**

       Plaintiff,

v.                                                                  Civil Action No. 2:24-cv-00701

**THE CHEMOURS COMPANY FC, LLC,**

       Defendant.

## CERTIFICATE OF SERVICE

       I, Amanda P. Demmerle, do hereby certify that, on April 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, which will notify the following participants:

| | |
|---|---|
| JAMES A. WALLS<br>SPILMAN THOMAS & BATTLE, PLLC<br>48 Donley Street, Suite 800<br>Morgantown, WV 26501<br>(304) 291-7920<br>jwalls@spilmanlaw.com | CLIFFORD F. KINNEY, JR.<br>JOSEPH CREIGHTON UNGER<br>DAVID L. YAUSSY<br>SPILMAN THOMAS & BATTLE, PLLC<br>P.O. Box 273<br>Charleston, WV 25301<br>(304) 340-3844<br>ckinney@spilmanlaw.com<br>junger@spilmanlaw.com<br>dyaussy@spilmanlaw.com |

                                                        **/s/ Derek O. Teaney**
                                                        **DEREK O. TEANEY (WVBN 10223)**