# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

**WEST VIRGINIA RIVERS COALITION, INC.,**

    **Plaintiff,**

v.                                          **CIVIL ACTION NO. 2:24-cv-00701**

**THE CHEMOURS COMPANY FC, LLC,**

    **Defendant.**

## DEFENDANT'S MEMORANDUM OF LAW ANSWERING
## THE COURT'S QUESTIONS ON INJUNCTION STANDARDS

**I. Has there been a shift by the Supreme Court in the injunction standard throughout time? If yes, does the shift have any influence on questions of proof for different relief, i.e., preliminary injunctions versus permanent injunctions?**

Yes, there has been a shift in the standard. For preliminary injunctions, the Fourth Circuit previously used the test in *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). The Supreme Court rejected standards like *Blackwelder*'s in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), and replaced them with a four-part standard that heightens the movant's burden of proof. The Fourth Circuit now follows that four-part standard. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009), *vacated on other grounds and remanded*, 559 U.S. 1089 (2010), *standard reaffirmed in* 607 F.3d 355 (4th Cir. 2010); *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (using the four-part *Winter* standard).

To secure a <u>preliminary</u> injunction under *Winter*, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." 555 U.S. at 20. *Winter*'s standard is more stringent than the *Blackwelder* test.

For example, instead of requiring a clear showing of the movant's likely irreparable harm, as *Winter* does, *Blackwelder* mandated that courts "*balance* the irreparable harm to the respective parties, requiring only that the harm to the plaintiff outweigh the harm to the defendant." *Real Truth*, 575 F.3d at 347. Additionally, *Blackwelder* permitted movants who made "a strong showing on the probability of success . . . [to] demonstrate only a possibility of irreparable injury." *Id.* But under *Winter*, "a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy." 555 U.S. at 22. *Winter* also emphasizes the public interest: courts "should pay *particular regard* for the public consequences in employing the extraordinary remedy of injunction." *Real Truth*, 575 F.3d at 347. *Blackwelder*, in contrast, had held that the public interest was not "always to be considered at length in preliminary

1

injunction analyses." *Id.* Finally, *Blackwelder* allowed a "flexible interplay" between the factors, but under *Winter*, all four factors "must be satisfied as articulated." *Id.*

In sum, today's standard recognizes injunctions as "extraordinary," "drastic" remedies. *Winter*, 555 U.S. at 22, 24; *Munaf v. Geren*, 553 U.S. 674, 689 (2008). Movants seeking prohibitory preliminary injunctions, as Plaintiff does here, ECF No. 8 at 2, must show likely irreparable harm during the case's pendency (*i.e.*, pending a permanent injunction ruling). *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017); *Murray v. Terry*, No. 2:18-cv-00942, 2018 WL 3543076, at *2 (S.D.W. Va. July 23, 2018). The movant must make a "clear showing" of all four factors. *Winter*, 555 U.S. at 20, 22; *Vitkus*, 79 F.4th at 361. Failure on any factor is sufficient for denial. *Vitkus*, 79 F.4th at 361.

For <u>permanent</u> injunctions, a similar test applies but requires movants to prevail on the merits rather than be likely to do so. A successful plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (same); *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017) (same). The preliminary and permanent injunction standards are similar, except permanent relief is even more demanding because it requires actual success on the merits and proof that legal remedies would be inadequate. *Nat'l City Bank of Ind. v. Turnbaugh*, 367 F. Supp. 2d 805, 821 (D. Md. 2005), *aff'd*, 463 F.3d 325 (4th Cir. 2006).

II. **Are the Clean Water Act ("CWA") preliminary-injunction irreparable-harm standards and CWA permanent-injunction irreparable-harm standards different? Is the public-interest prong more significant in a permanent-injunction analysis than in a preliminary-injunction analysis?**

Yes, the standards differ slightly. For a preliminary injunction, the movant must make a clear

showing that, absent preliminary relief, it will likely suffer irreparable harm during the suit's pendency. *Winter*, 555 U.S. at 20; *Vitkus*, 79 F.4th at 361. For a permanent injunction, the movant must show that it has *already* suffered irreparable injury and will continue to suffer such harm. *Compare Vitkus*, 79 F.4th at 361, *with Geertson*, 561 U.S. at 156–57.

The *Winter* irreparable-harm showing applies in CWA cases. *Courtland Co. v. Union Carbide Corp.*, No. 2:21-cv-00101, 2021 WL 1255416, at *24–25 (S.D.W. Va. Apr. 5, 2021) (analyzing, for CWA preliminary-injunction motion, whether "the plaintiff itself will be irreparably harmed") (underline in original); *Coastal Conservation League v. U.S. Army Corps of Eng'rs*, No. 4:16-cv-03008-RBH, 2016 WL 6823375, at *18 (D.S.C. Nov. 18, 2016) (using *Winter* irreparable-harm prong in a CWA case). NPDES permit limit exceedances alone are not *per se* irreparable harm. *Hudson Riverkeeper Fund, Inc. v. Yorktown Heights Sewer Dist.*, 949 F. Supp. 210, 212 (S.D.N.Y. 1996).

Both the irreparable-harm and balance-of-equities prongs require showings of likely harm to the movant to warrant an injunction. *Courtland Co.*, 2021 WL 1255416, at *24–25 (citing ten cases to support that "obtaining preliminary relief requires a showing that the plaintiff itself will be irreparably harmed unless preliminary relief is granted . . . even when the claims under review are Clean Water Act claims"); *Coastal Conservation*, 2016 WL 6823375, at *19 ("Destruction of the wetlands matters only to the extent it will harm Plaintiffs because the balance of the equities takes into account injuries to the parties, not to the environment") (citing *Winter*, 555 U.S. at 24).

Plaintiff suggests that harm to the environment and public, without a clear showing of likely irreparable harm to itself, warrants an injunction. ECF No. 8 at 13; ECF No. 18 at 8. Plaintiff is incorrect. *First*, if invoking public injury satisfied the irreparable-harm prong, the public-interest prong would be duplicative. *Second*, Plaintiff cites several cases to argue that environmental injury alone suffices for an injunction. ECF No. 18 at 8–9. But the cases show the opposite. *See Hazardous*

3

*Waste Treatment Council v. State of S.C.*, 945 F.2d 781, 787 (4th Cir. 1991) (analyzing "the likelihood of irreparable harm ***to the plaintiff*** if the preliminary injunction is denied"); *id.* at 788 ("the absence of a new facility to handle waste . . . would create irreparable harm, ***not only to HWTC*** but to the public"); *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004) ("the company must demonstrate that ***it*** will suffer irreparable harm . . . and the ***company's harm*** must be weighed against any harm to the landowner") (all emphases added). Plaintiff also cites *Sierra Club v. Morton*, 405 U.S. 727 (1972), and *Warth v. Seldin*, 422 U.S. 490 (1975), to state that it "may argue the public interest in support of [its] claim." ECF No. 18 at 8. True, but inapposite; Chemours does not contest that Plaintiff can argue the public interest to support its motion. Indeed, Plaintiff *must* provide a public-interest argument for an injunction. *Winter*, 555 U.S. at 20. But Plaintiff must *also* show that it will likely be irreparably harmed without relief and that its harm outweighs Chemours' harm. *Id.*

Plaintiff further relies on *Courtland Co. v. Union Carbide Corp.*, No. 2:19-cv-00894, 2024 WL 4339600 (S.D.W. Va. Sept. 27, 2024)—a case now on appeal—to argue that public injury alone suffices for preliminary relief. ECF No. 18 at 8. But the court found an *absence* of harm, *id.* at *6–7, so statements about the standard were dicta. The court also expressly rejected, in an earlier opinion in the same case, the proposition that environmental or public harm can supplant the movant's harm:

> The traditional equitable analysis for obtaining preliminary relief requires a showing that the plaintiff itself will be irreparably harmed unless preliminary relief is granted. A plaintiff cannot satisfy this requirement by showing only that, in the absence of relief, a third party will be harmed. Thus, the Supreme Court and the Fourth Circuit have consistently described the irreparable-harm requirement as necessitating a showing of harm to the plaintiff.

*Courtland*, 2021 WL 1255416, at *25 (citation omitted) (emphases in original). In any event, the three cases cited in the later *Courtland* opinion do not support that public injury alone suffices:

- *Geertson* says a "plaintiff must demonstrate: (1) that ***it*** has suffered an irreparable injury" and that the "respondents cannot show that ***they*** will suffer irreparable injury." 561 U.S. at 156–57, 162.

4

- *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 307 (1982), a CWA case, was brought by Puerto Rico through its Governor and residents. The Court's analysis of harm to Puerto Rico's environment was an analysis of harm *to the movant*, Puerto Rico.
- In *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987), the Court analyzed "the effect **_on each party_** of the granting or withholding of the requested relief." (emphasis added).

Finally, the public interest must be considered, and is significant, analyzing either a preliminary injunction, *see Winter*, 555 U.S. at 20, or a permanent injunction, *see Geertson*, 561 U.S. at 156–57.

Here, Plaintiff's harm argument relies on a single member, Charlise Robinson. *See* ECF No. 8. Plaintiff argues that Chemours' exceedances of its NPDES permit limit for HFPO-DA affects the Ohio River and Ms. Robinson's drinking water. But Ms. Robinson identified past harm only from PFOA, a distinct compound, which occurred years before HFPO-DA was used at Washington Works starting in 2013. ECF No. 7-20 ¶¶ 8, 10. She states that, due to concerns "about PFAS, including HFPO-DA, exposure," she "stopped drinking the water directly distributed from a tap." *Id.* ¶ 16. But her concerns about exposure to PFAS *generally* suggest she would continue not to drink her water even if HFPO-DA in particular was eliminated—undermining any causation. She also never stated *when* she stopped drinking tap water; if before 2013, Chemours cannot be the reason. Nor did she say that she refrains from drinking her water *because of* Chemours' exceedances of its HFPO-DA permit limit—only that she is "aware" of the exceedances. *Id.* ¶ 15. The omission suggests she may not resume drinking tap water even if Chemours could guarantee compliance with its permit. In fact, Ms. Robinson did not even say that she totally stopped drinking tap water—only that she "stopped drinking the water *directly distributed* from a tap." *Id.* ¶ 16 (emphasis added). The phrasing suggests she *does* drink her tap water, but perhaps only after it has been filtered. Plaintiff's choice not to bring Ms. Robinson to the hearing, where she could have been cross-examined, is accordingly quite telling.

5

**THE CHEMOURS COMPANY FC, LLC**

**By: SPILMAN THOMAS & BATTLE, PLLC**

*/s/ Joseph A. Ford*
David L. Yaussy (WV State Bar No. 4156)
Clifford F. Kinney, Jr. (WV State Bar No. 6220)
Joseph A. Ford (WV State Bar No. 12984)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East
Charleston, WV 25301
(304) 340-3800
(304) 340-3801 (*facsimile*)
dyaussy@spilmanlaw.com
ckinney@spilmanlaw.com
jford@spilmanlaw.com

James A. Walls (WV State Bar No. 5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
(304) 291-7920
(304) 291-7979 (*facsimile*)
jwalls@spilmanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**WEST VIRGINIA RIVERS COALITION, INC.,**

      **Plaintiff,**

v.                               **CIVIL ACTION NO. 2:24-cv-00701**

**THE CHEMOURS COMPANY FC, LLC,**

      **Defendant.**

## CERTIFICATE OF SERVICE

I, Joseph A. Ford, hereby certify that on May 30, 2025, I electronically filed the foregoing "**Defendant's Memorandum of Law Answering the Court's Questions on Injunction Standards**" via the Court's CM/ECF electronic filing system, which will send notification to all e-filing participants in this action.

                                                      */s/ Joseph A. Ford*
                                                      Joseph A. Ford (WV State Bar No. 12984)