IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WEST VIRGINIA RIVERS COALITION, INC.,

Plaintiff,

v.                                     CIVIL ACTION NO.   2:24-cv-00701

THE CHEMOURS COMPANY FC, LLC,

Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Little Hocking Water Association, Inc.'s ("LHWA") Motion to Intervene as Plaintiff, [ECF No. 64], filed May 23, 2025. Defendant The Chemours Company FC, LLC, responded in opposition on June 6, 2025. [ECF No. 80]. LHWA timely replied, [ECF No. 84]. The matter is now ripe for review.

**I.      Background**

On December 5, 2024, Plaintiff West Virginia Rivers Coalition, Inc. instituted this action for declaratory and injunctive relief as well as for civil penalties against Defendant The Chemours Company FC, LLC, for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. ("Clean Water Act" or "CWA") at the Chemours Washington Works plant in Wood County, West Virginia. [ECF No. 1]. Specifically, Plaintiff alleges the Defendant "has discharged and continues to discharge pollutants" into the Ohio River (waters of the United States) in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§1311, 1342. *Id.* ¶ 2. As a result of the discharges, Plaintiff alleges that Chemours has also violated "an effluent standard or limitation" set by

WV/NPDES Permit No. WV 0001279 (hereinafter "the Permit"). *Id.*; 33 U.S.C. §§ 1365(f)(1), (f)(7).

Simply put, Defendant has been violating the discharge limits set by the Permit for several chemicals, including perfluorooctanoic acid ("PFOA") and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX"), at the Washington Works Plant.

On February 25, 2025, Plaintiff filed its Motion for a Preliminary Injunction. [ECF No. 7]. Plaintiff asks this court to issue a preliminary injunction against Defendant prohibiting the Defendant from committing further violations of the HFPO-DA effluent limitations, specifically at Outlets 002 and 005, of the Permit and compelling Defendant to achieve compliance with the Permit by any means necessary. *Id.* Plaintiff claims that Defendant has consistently violated the permit limit for HFPO-DA at Outlets 002 and 005. The monthly discharge monitoring reports for concentrations of HFPO-DA in the effluent from Outlets 002 and 005 between May 2024 and March 2025 follows below.

The court held a Preliminary Injunction Hearing in this case from May 21–23, 2025. On the last day of the hearing, LHWA filed the instant Motion to Intervene pursuant to Federal Rule of Civil Procedure 24, and on May 27, 2025, LHWA filed its accompanying Memorandum in Support of Motion to Intervene, [ECF No. 67]. LHWA asserts it should be permitted to intervene as of right under Rule 24(a)(2) as (1) LHWA is a drinking water provider whose water supply has been contaminated and therefore has interest in the subject matter of the action, (2) LHWA's legal, property, and business interests would be impaired without their participation in the action, (3) Plaintiff cannot adequately represent LHWA's interest, and (4) LHWA's motion is timely. In the alternative, LHWA argues that it should be granted permissive intervention under Rule 24(b).

The Defendant responded in opposition that allowing LHWA to intervene following the Amended Scheduling Order would result in substantial prejudice. [ECF No. 80]. In addition, Defendant alleges that LHWA (1) lacks standing, (2) fails to satisfy the requirements for intervention as of right, and (3) has not demonstrated that permissive intervention is appropriate. *Id*. Specifically, the Defendant alleges any HFPO-DA found in LHWA's Wellfield is due solely to air deposition, not the unpermitted discharges at issue here. *Id.* at 6.

LHWA's reply provides the declaration of Dr. Frank Schwartz, a hydrologist who previously served as an expert in *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 756–58 (S.D. Ohio 2015). The 2014 declaration of Dr. Schwartz explains how the wells draw their water at LHWA. He opined that LHWA wells "undisputedly capture the river water from an area that extends more than one mile downriver from the Wellfield." [ECF No. 84, at 2]. This opinion directly contradicts the position taken by the Defendant.[1]

## II.    Legal Standard

"To intervene in an action as of right pursuant to Federal Rule of Civil Procedure 24(a), a movant must (1) timely file a motion to intervene and (2) satisfy one of the two listed criteria." *United States v. Bayer Cropscience LP*, No. 2:15-cv-13331, 2018 WL 3553413, at *5 (S.D. W. Va. July 24, 2018). "To intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), the moving

---

[1] Defendant acknowledged this in its Response in Opposition. [ECF No. 80, at 6 n.7]. Defendant claims, "That court never decided whether the facility's water discharges to the Ohio River could reach LHWA's wellfield." *Id.* A review of the Southern District of Ohio opinion confirms this. That court found when viewing Plaintiff's expert testimony (including Dr. Schwartz) in the light most favorable to the Plaintiff that there were "genuine issues of material fact concerning the existence of a water pathway from the Ohio River to the Little Hocking Wellfield." *Little Hocking Water Ass'n, Inc.*, 91 F. Supp. 3d at 959. Additionally, the court found that "[LHWA] ha[d] established a genuine issue of material fact concerning whether the river pathway is a continuing source of contamination to the Wellfield due to contaminated river sediment." *Id.*

party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981); *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999).

Further, "any putative intervenor who seeks entry into a case through Rule 24(a) must not only satisfy that rule's requirements for intervention, but must also at a minimum satisfy Article III of the United States Constitution, which limits the judicial power to cases and controversies." *Am. Fed'n of Tchrs. - W. Virginia, AFL-CIO v. Kanawha Cnty. Bd. of Educ.*, No. 2:08-cv-01406, 2009 WL 10705182, at *3 (S.D. W. Va. Jan. 14, 2009) (Goodwin, J.); *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017) ("[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.").

### III.   Discussion

"At the outset, we note that liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). "[I]n the intervention context, it is the trial judge who is best able to determine whether, for example, a proposed intervenor's interests are being adequately represented by an existing party pursuant to Rule 24(a)(2)." *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013).

### A.   Standing

"The Fourth Circuit has explained that '[i]n the environmental litigation context, the standing requirements are not onerous.'" *Ohio Valley Env't Coal. v. Horinko*, 279 F. Supp. 2d 732,

742 (S.D. W. Va. 2003) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 517 (4th Cir. 2003)). "[I]n addition to the . . . constitutional standing requirements, an individual also must satisfy any applicable statutory requirements for standing." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011) ("*Gaston III*") (explaining the standing requirements in a citizen suit brough under the Clean Water Act).

"To meet the constitutional minimum for standing, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (en banc) ("*Gaston I*") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). To establish Article III standing, a plaintiff must show that (1) he suffered an injury-in-fact that is both concrete and particularized, as well as either actual or imminent; (2) the injury was likely caused by the defendant; and (3) the injury is redressable by judicial relief. *Sommerville v. Union Carbide Corp.*, No. 2:19-CV-00878, 2024 WL 2139394, at *5 (S.D. W. Va. May 13, 2024) (Goodwin, J.) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ("*Lujan I*")).

> Congress authorized the federal district courts to entertain Clean Water Act suits initiated by "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. §§ 1365(a), (g). To impel future compliance with the Act, a district court may prescribe injunctive relief in such a suit; additionally or alternatively, the court may impose civil penalties payable to the United States Treasury. § 1365(a).

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 173 (2000). "[T]he citizen suit provision of the Clean Water Act confers standing on any 'person or persons having an interest which is or may be adversely affected.'" *Gaston I*, 204 F.3d at 155 (4th Cir. 2000) (quoting 33 U.S.C. § 1365(g)). "Thus, if a Clean Water Act plaintiff meets the constitutional requirements for standing, then he *ipso facto* satisfies the statutory threshold as well." *Gaston I*, 204 F.3d at 155.

"When a party opposes a motion to intervene on the basis of standing, the prospective intervenor must allege facts showing the familiar elements of Article III standing." *Am. C.L. Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011). The court "must construe the motion to intervene in favor of the prospective intervenor, accepting all material allegations as true." *Id*. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *see also Connecticut v. United States Dep't of the Interior*, 344 F. Supp. 3d 279, 296 (D.D.C. 2018).

LHWA's Wellfield is located 1,300 feet directly across the Ohio River from the Washington Works facility and is used to service 12,000 water users. [ECF No. 67, at 1]. LHWA claims that in the past 20 years this Wellfield has "been at the epicenter of PFAS contamination resulting from the Defendant's releases of PFAS chemicals into the environment." *Id*. at 2. In 2018, LHWA sampled the raw water from its Wellfield, and it showed concentrations of HFPO-DA as high as 880 ppt. *Id*. at 3. In 2023, sampling performed by the Defendant showed PFOA and more PFAS in LHWA production wells. *Id.* The Wellfield's increasing and continuing contamination is a clear injury in fact. The declaration of Dr. Schwartz supports that this injury is fairly traceable to the Defendant's unpermitted and illegal discharge into the Ohio River due to the wells at LHWA pulling in downstream water from the river to the Wellfield.

Inasmuch as LHWA asserts (1) its Wellfield has been contaminated by HFPO-DA from the Washington Works facility, (2) the contamination is directly related to Chemours' violation of the Permit discussed above, and (3) the contamination is redressable by Court order, I **FIND** the LHWA has both constitutional and statutory standing to intervene.

### B. Timeliness

"[T]imeliness is a 'cardinal consideration' of whether to permit intervention, we first consider the timeliness of Beaumont's motion to intervene." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (citing *Brink v. DaLesio,* 667 F.2d 420, 428 (4th Cir. 1981)). "The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) (quoting *United States v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)), *rev'd sub nom. Devlin v. Scardelletti*, 536 U.S. 1 (2002). "Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court." *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974).

In determining whether a motion to intervene "is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014); *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). "The determination of timeliness is committed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *Id.*

Here, at the time LHWA filed its Motion to Intervene it was more than timely under the prior Scheduling Order. While the Amended Scheduling Order in this matter does have discovery—as well as the rest of the case—moving on an expedited basis, Defendant will not be prejudiced by LHWA's intervention. As I previously mentioned at the Preliminary Injunction Hearing, any discovery disputes will be handled by this court, so this should alleviate any prejudice the Defendant claims to experience by the intervention of LHWA. LHWA also maintains that it

will abide by the current case schedule and timely provide its unique information in an efficient manner without delay. [ECF No. 84, at 17–18].

As noted by both parties, they are no strangers. In fact, they were involved in litigation over Washington Works as recently as 2016. *See Little Hocking Water Ass'n, Inc.*, 91 F. Supp. 3d at 959. The parties' prior litigation history and their familiarity with one another as well as the Washington Works facility should streamline discovery and reduce potential disputes.

### C.  Interest in Subject Matter

"The Fourth Circuit requires intervenors to show they 'stand to gain or lose by the direct legal operation of the district court's judgment' in the pending action." *Sierra Club v. United States EPA*, Civil Action No. 3:24-0130, 2024 U.S. Dist. LEXIS 136529, at *14 (S.D. W. Va. Aug. 1, 2024) (quoting *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)). "[T]his inquiry looks to see if the intervenor 'has a stake in the matter that goes beyond a generalized preference that the case come out a certain way.'" *Id.* (quoting *DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021)).

"To support a right to intervene the potential intervenor's interest in the dispute 'must be direct, rather than remote or contingent.'" *S.C. Coastal Conservation League v. Pruitt*, No. 2-18-cv-330-DCN, 2018 WL 2184395, at *8 (D.S.C. May 11, 2018) (quoting *Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D. Va. 1993)).

Though LHWA and Plaintiff share a similar interest in protecting the Ohio River and other waters that may be contaminated by Defendant, LHWA also has an independent interest in protecting its Wellfield. The Wellfield is used by LHWA to provide drinking water to its customers. LHWA has an independent interest in protecting the soil and underlying groundwater in its Wellfield as well as any business, operation, and structures of LHWA. These interests clearly reach beyond a generalized preference that Defendant be enjoined from violating its Permit. In

8

fact, LHWA's engagement in vigorous litigation within the last ten years against Chemours' predecessor, DuPont, over PFOA (C8) released from the same facility at issue here only supports LHWA's intervention in this matter.

### D.  Impaired Ability to Protect Interests

"The focus of the third requirement is whether the movant will be practically disadvantaged if not permitted to intervene." *Alt v. United States EPA*, Civil Action No. 2:12-CV-42, 2012 U.S. Dist. LEXIS 194429, at *13 (N.D. W. Va. Oct. 9, 2012) (citing *Feller*, 802 F.2d at 729). "The impairment prong is satisfied where: (1) disposition of the action would put the movant at a 'practical disadvantage' in protecting its interest, or (2) the stare decisis effect of a judgment would legally preclude the would-be intervenor from protecting its interest later." *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 26 (S.D. W. Va. 2015) (citing *Francis v. Chamber of Commerce of U.S.,* 481 F.2d 192, 195 n.8 (4th Cir.1973)).

LHWA has a wealth of knowledge about its Wellfield, which Plaintiff claims would be irreparably harmed if the preliminary injunction is not granted. [ECF No. 67, at 8–9]. LHWA should be allowed to intervene in order to protect its interest in the Wellfield and take part in any remedial or restoration activities that may occur as a result of the instant litigation. Specifically, LHWA is concerned about the capacity of the granular activated carbon (GAC) system with the continued increased of HFPO-DA in its Wellfield. [ECF No. 84, at 4]. This interest is unique to LHWA and would be impaired if LHWA were not allowed to intervene.

### E.  Adequacy of Representation by Named Party

"The burden of demonstrating inadequate representation under Rule 24 'should be treated as minimal.'" *Alt*, U.S. Dist. LEXIS 194429, at *16 (quoting *Teague*, 931 F.2d at 262). "Proposed intervenors are required only to show that the representation might be inadequate. Indeed, it may

be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.* at 15. "The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties." *Shenandoah Riverkeeper v. Ox Paperboard, LLC*, Civil Action No. 3:11-CV-17, 2011 U.S. Dist. LEXIS 52318, at *7–8 (N.D. W. Va. May 16, 2011) (citing *Brennan v. N.Y.C. Bd. of Educ.,* 260 F.3d 123, 132 (2d Cir. 2001)).

As noted above, both LHWA and Plaintiff seek to protect the waterways contaminated by the Defendant's unpermitted and illegal discharge. Though Plaintiff raised the argument that irreparable harm will befall LHWA's Wellfield, that does not mean that Plaintiff will put forth the same arguments that LHWA would in protecting its interests—including its business, operation, and structures. LHWA also has information relating to the Washington Works from a prior years-long litigation with DuPont that Plaintiff does not have. [ECF No. 84, at 16]. The scientific and technical issues that have arisen at the Wellfield from Defendant's alleged unpermitted discharge are unique to LHWA and would not be adequately represented by Plaintiff.

## IV.    Conclusion[2]

For the reasons set forth above, LHWA's Motion to Intervene as Plaintiff, [ECF No. 64], is **GRANTED**. The Clerk is **DIRECTED** to file LHWA's Intervenor Complaint, [ECF No. 64-2], on the docket and the Defendant is **DIRECTED** to file their response to the Intervenor Complaint on or before June 30, 2025.

---

[2] Inasmuch as LHWA is seeking to join a CWA citizen suit already in progress, LHWA is not required to notify Defendant of its intent to sue before intervening. *Dubois v. U.S. Dept. of Agriculture*, 102 F.3d 1273, 1295 n.27 (1st Cir. 1996).

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:  June 16, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE