IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

WEST VIRGINIA RIVERS COALITION, INC., and
LITTLE HOCKING WATER ASSOCIATION, INC.

      Plaintiffs,

v.         CIVIL ACTION NO. 2:24-cv-00701

THE CHEMOURS COMPANY FC, LLC,

      Defendant.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON WEST VIRGINIA RIVERS COALITION'S STANDING AND PLAINTIFFS' ALLEGED PFOA VIOLATIONS AT OUTLET 002

Defendant The Chemours Company FC, LLC ("Chemours") submits this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated in the Memorandum of Law accompanying this Motion and the attached Exhibits, Chemours respectfully requests that the Court grant summary judgment in Chemours' favor on two issues: (1) Plaintiff West Virginia Rivers Coalition, Inc.'s ("WVRC") standing and (2) the violations (as alleged by WVRC and Plaintiff-Intervenor Little Hocking Water Association, Inc.) of the perfluorooctanoic acid ("PFOA") limits applicable to Outlet 002 at Washington Works in Chemours' National Pollutant Discharge Elimination System Permit. Chemours additionally requests that, if the Court finds that there remains a genuine dispute of material fact over WVRC's standing, the Court wait to rule on WVRC's summary-judgment arguments and WVRC's pending Preliminary-Injunction Motion, ECF No. 7, until trial when the threshold jurisdictional question can be resolved.

1.    A movant is entitled to summary judgment on an issue under Rule 56 when, in relation to that issue, there remains no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, there is no genuine dispute

of material fact that, in light of the evidence, WVRC lacks standing under Article III of the United States Constitution to bring its claims. There is also no genuine dispute of material fact that Plaintiffs failed to show Chemours in continuing violation of its PFOA effluent limits for Outlet 002.

2. WVRC purports to have representational standing on its members' behalf. *See* ECF No. 8 at 8–9. WVRC's witnesses Monty Fowler and Charlise Robinson each do not have individual standing and thus cannot support WVRC's representational standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167.

3. WVRC carries the burden to show that it is properly before a federal court at each stage of litigation. *RE Sources for Sustainable Cmtys. v. Pac. Int'l Terminals, Inc.*, No. C11-2076-JCC, 2013 WL 11233980, at *4 (W.D. Wash. July 23, 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

4. At the summary judgment stage WVRC "must affirmatively demonstrate that there are no genuine issues of material fact with regard to its own—and thus, Ms. [Robinson's and Mr. Fowler's]—standing to bring this lawsuit." *Id.*

5. Analysis of Ms. Robinson and Mr. Fowler's deposition testimony (Exs. 1, 5),[1] their Declarations (ECF No. 7-20 and Ex. 2), water-testing results from Ms. Robinson's tap water (Ex. 4), a water-quality report from Mr. Fowler's water supplier (Ex. 3), sampling results from the Ohio River's water downstream of Washington Works and from treated water at Ms. Robinson's water supplier (reflected in ECF No. 17-7), and of several WVRC filings in this case shows that neither witness has the requisite injury-in-fact. *See Laidlaw*, 528 U.S. at 180–81 (stating that standing is

---

[1] The precise address of Mr. Fowler is redacted in his deposition transcript per request of WVRC.

shown when a plaintiff has (1) an injury-in-fact that is (2) fairly traceable to the defendant's challenged conduct and that is (3) redressable by a favorable decision from a court).

6. The same evidence fails to show a connection between Chemours' alleged Permit violations and Mr. Fowler's alleged fear-of-PFAS injury. And Ms. Robinson has explicitly testified that, no matter the relief this Court might grant, her alleged fear of PFAS will remain.

7. Where an alleged injury-in-fact amounts to a fear, concern, or worry, courts mandate that the fear be reasonable and more than mere conjecture or speculation. *See RE Sources for Sustainable Cmtys.*, 2013 WL 11233980, at *6; *see also Laidlaw*, 528 U.S. at 184. In determining the reasonableness of an alleged fear, "[i]t is the *reality* of the threat of [impending] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) (emphasis in original).

8. As explained more fully in the accompanying Memorandum and the attached Exhibits, Ms. Robinson and Mr. Fowler's "injuries-in-fact" amount, at bottom, to fear of per- and polyfluoroalkyl substances ("PFAS") in their respective household water. Neither witness's fear rises above unreasonable. Ms. Robinson sampled her tap water in December 2024, and the results state that all 55 of the sampled-for PFAS were not detectable, including hexafluoropropylene oxide-dimer acid ("HFPO-DA") and PFOA—the only two PFAS at issue in this matter.

9. Chemours must and does monitor and maintain a granular activated carbon treatment system at Ms. Robinson's water supplier that effectively removes PFAS, including HFPO-DA and PFOA. Sampling results of her water supplier's post-treatment water show that her water complies with the 10 parts-per-trillion HFPO-DA Maximum Contaminant Level set by the United States Environmental Protection Agency—strong evidence of the unreasonableness of Ms. Robinson's alleged fear. *See* 40 C.F.R. § 141.61(c)(2); *see also* 40 C.F.R. § 141.903.

10. Mr. Fowler lives further downriver from Washington Works, at a location in Huntington, West Virginia. He has never sampled his tap water, he does not know if his tap water contains, or has ever contained, any PFAS, he was never told by anyone - including his water supplier - that he should worry about PFAS in his tap water, and he uses his tap water (sometimes with a filter and sometimes not) for drinking, cooking, and other household uses. The only bases for his alleged fear are unspecified news stories, many dating back to 2020 and earlier. He even conceded that he knows no "specifics" of Chemours' alleged Permit violations. And in any event, the 2024 Annual Water Quality Report from his water supplier shows that his water complies with all applicable state and federal requirements and has levels of HFPO-DA and PFOA so low that they are barely detectable.

11. WVRC is also now alleging that its standing is supported by Ms. Robinson's newly asserted recreational harms. *Compare* Ex. 6 at 3–4, *with* ECF No. 110 at 15–16 ("If this case *were* about recreational harms to Ms. Robinson and the Ohio River . . . ") (emphasis added).

    a. Ms. Robinson recently stated for the first time that she occasionally boats on the Ohio River and would enjoy boating more if Chemours' alleged Permit violations ceased. She also claimed that she would "get in" the river if it were generally cleaner.

    b. Ms. Robinson's second alleged "injury-in-fact" boils down again to an unreasonable fear, concern, or worry—specifically, about PFAS impacts on recreation in, on, or near the Ohio River. Water samples collected downstream from Washington Works show that the river's raw water has average HFPO-DA concentrations well below 10 parts per trillion. EPA has determined that 10 parts per trillion of HFPO-DA is safe to *drink* over a lifetime, even for sensitive groups like young children. WVRC has presented no evidence that recreational activity near, in,

4

or on the Ohio River presents a greater risk due to HFPO-DA or PFOA than actually drinking the water.

  c. Notably, Chemours has a Permit, issued by the West Virginia Department of Environmental Protection under authority granted by the United States Environmental Protection Agency, to discharge HFPO-DA and PFOA to the Ohio River. Regardless of the outcome of this litigation, those compounds will be discharged to the river's water. Accordingly, Ms. Robinson's newly alleged recreational fears are likewise unreasonable.

 12. To establish liability in a Clean Water Act citizen suit, citizen-plaintiffs must show that the defendant is in continuing violation of each permit parameter raised by the citizen-plaintiffs. A Clean Water Act citizen suit will not lie in instances of exclusively "wholly past violations." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57, 64 (1987).

  a. To show continuing violations, plaintiffs have two avenues: "either (1) [] proving violations that continue on or after the date the complaint is filed, or (2) [] adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sierra Club v. Powellton Coal Co., LLC*, No. 2:08–1363, 2010 WL 454929, at *18 (S.D.W. Va. Feb. 3, 2010) (quoting *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171–72 (4th Cir. 1988)).

  b. The continuing-violations inquiry occurs on a "parameter-by-parameter basis." *Id.* at *17 (cleaned up); *see also Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1173 (5th Cir. 1987) ("a violation of an effluent limitation (a 'parameter') at one-point source is not a violation of any parameter at another point source even if the same pollutant is involved. . . . [O]ne must look at each parameter within each point source independently.").

13. WVRC and LHWA have not and cannot offer any evidence showing that Chemours is in ongoing violation of the PFOA parameters applicable to Outlet 002 at Washington Works. Plaintiffs' only evidence of PFOA violations at Outlet 002 are two exceedances from October 2022, nearly three years ago. Plaintiffs have not and cannot point to any post-Complaint PFOA exceedances at Outlet 002, and where their only evidence is violations nearly three years old, a reasonable trier of fact cannot find that such violations are likely in the future. *See Allen Cnty. Citizens for the Env't, Inc. v. BP Oil Co.*, 762 F. Supp. 733, 741 (N.D. Ohio 1991).

WHEREFORE, for the reasons set forth herein and in the accompanying memoranda in support of this motion, Chemours is thus entitled to summary judgment on these issues, and should be granted such other relief as the Court deems appropriate.

**THE CHEMOURS COMPANY FC, LLC**

**By: SPILMAN THOMAS & BATTLE, PLLC**

/s/ *Clifford F. Kinney, Jr.*
David L. Yaussy (WV State Bar No. 4156)
Clifford F. Kinney, Jr. (WV State Bar No. 6220)
Joseph A. Ford (WV State Bar No. 12984)
Niall A. Paul (WV State Bar No. 5622)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East
Charleston, WV 25301
(304) 340-3800
(304) 340-3801 (*facsimile*)
dyaussy@spilmanlaw.com
ckinney@spilmanlaw.com
jford@spilmanlaw.com
npaul@spilmanlaw.com

James A. Walls (WV State Bar No. 5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
(304) 291-7920
(304) 291-7979 (*facsimile*)
jwalls@spilmanlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

**WEST VIRGINIA RIVERS COALITION, INC., and**
**LITTLE HOCKING WATER ASSOCIATION, INC.,**

    Plaintiffs,

v.    Civil Action No. 2:24-cv-00701

**THE CHEMOURS COMPANY FC, LLC,**

    Defendant.

## CERTIFICATE OF SERVICE

I, Clifford F. Kinney, Jr., hereby certify that on August 6, 2025, I electronically filed the foregoing "**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON WEST VIRGINIA RIVERS COALITION'S STANDING AND PLAINTIFFS' ALLEGED PFOA VIOLATIONS AT OUTLET 002**" via the Court's CM/ECF electronic filing system, which will send notification to all e-filing participants in this action.

                                    */s/ Clifford F. Kinney, Jr.*
                                    Clifford F. Kinney, Jr. (WV State Bar No. 6220)