# Exhibit

# 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**WEST VIRGINIA RIVERS COALITION, INC.**

  Plaintiff,

**LITTLE HOCKING WATER ASSOCIATION, INC.**

  Intervenor-Plaintiff,

v.             Civil Action No. 2:24-cv-00701

**THE CHEMOURS COMPANY FC, LLC,**

  Defendant.

**PLAINTIFF WEST VIRGINIA RIVERS COALITION, INC.'S
OBJECTIONS AND ANSWERS**

**TO**

**CHEMOURS' SECOND SET OF INTERROGATORIES
TO WEST VIRGINIA RIVERS COALITION, INC.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and L.R. Civ. P. 26.2 and 33.1, Defendant The Chemours Company FC, LLC ("Chemours"), by and through its undersigned counsel, hereby serves the following interrogatories upon Plaintiff West Virginia Rivers Coalition, Inc. ("WVRC"). Pursuant to the agreement between Chemours and WVRC, WVRC shall answer the following interrogatories separately and fully in writing under oath on or before July 30, 2025, in accordance with the Federal Rules of Civil Procedure, all other applicable rules and court practices, and the definitions and instructions set forth below.

## WEST VIRGINIA RIVERS COALITION'S GENERAL STATEMENT

Plaintiff provides the foregoing Objections and Answers solely for the purpose of this action. Each Answer and Objection is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any grounds that

would require the exclusion of any statements contained herein if such discovery request were asked of, or statements contained herein where made by, a witness testifying in court, all of which objections and grounds are hereby expressly reserved and may be interposed at the time of trial.

The Objections and Answers submitted herein shall not be deemed to constitute admissions (i) that any particular document or thing is relevant, nonprivileged, or admissible in evidence; or (ii) that any statement or characterization in the discovery requests is accurate or complete.

**WEST VIRGINIA RIVERS COALITION'S GENERAL OBJECTIONS**

1.      To the extent these Interrogatories ("Discovery Requests") may be construed as calling for documents or information subject to a claim of privilege, including without limitation, the attorney-client privilege or work product privilege, Plaintiff hereby claims such privilege and objects to the discovery on that basis. Information subject to these privileges will be withheld or redacted. Plaintiff intends to screen all materials to be released to Defendant to remove privileged matters; however, there is a possibility that privileged information may have been inadvertently disclosed. By accepting any production, Defendant agrees that, to the extent there is any inadvertent disclosure of privileged information, it shall not constitute any waiver of privileges, and all such material shall be immediately returned to Plaintiff. Plaintiff reserves the right to object to the introduction into evidence before the Court at any time before or at trial of information that is privileged under law and that has been revealed or produced inadvertently. Plaintiff does not, by responding to these discovery requests, waive any claim of privilege or right to assert attorney work product.

3

2.      Plaintiff objects to the Discovery Requests to the extent they request production of documents and/or information that contain proprietary and confidential business and financial information, or information concerning individual customers, disclosure of which would be harmful to the legitimate expectation or right of privacy pursuant to applicable law. Confidential information will only be produced, if at all, marked as "Confidential" and subject to the protective order entered in this case.

3.      All specific Answers to the Discovery Requests, including the production of documents, are provided without waiver of, and with express reservation of:

(a) All objections to the competency, relevancy, materiality, foundation, and admissibility of the responses and the subject matter thereof as evidence in any further proceedings in this action, including trial, or in any other action;

(b) All privileges, including the attorney-client privilege and the work product doctrine;

(c) The right to object on any ground at any time to a demand or request for further responses to these or any other discovery requests; and

(d) The right to move for a protective order to protect the confidentiality of any information disclosed or for any other purpose provided by law.

4.      Plaintiff objects to the Discovery Requests to the extent they are overly broad, unduly burdensome, seek information that is not relevant to the subject matter of this action, and are not reasonably calculated to lead to the discovery of admissible evidence. Where appropriate, Plaintiff will respond with a reasonable limitation in time and/or scope.

5.      Plaintiff objects to the Discovery Requests to the extent they are vague, ambiguous, duplicative, and/or subject to multiple interpretations.

6.      Plaintiff objects to the Discovery Requests to the extent they call for information

that is not in Plaintiff's possession, or information that is a matter of public record or otherwise equally available to Defendant, or which call for Plaintiff to supply information generated by other persons and/or entities.

7.      Plaintiff objects to the Discovery Requests to the extent they seek an admission regarding a genuine issue for trial or call for a legal conclusion.

8.      The Answers and Responses set forth below represent Plaintiff's present knowledge, based on discovery, investigation, and trial preparation to date. Discovery, investigation, and trial preparation are continuing. Plaintiff reserves the right to rely upon any further information adduced upon completion of discovery, investigation, and trial preparation.

9.      The General Objections are incorporated into each of the responses and objections set forth below, which are made without waiver of any of these General Objections.

## INSTRUCTIONS

1.      You are to furnish all information available to you in answering the interrogatories, including information in the possession of your attorneys, employees, agents, other persons directly or indirectly employed by you, or anyone acting on your behalf or otherwise subject to your control, and not merely such information as the persons preparing the responses know of from their own personal knowledge.

**OBJECTION:** Plaintiff West Virginia Rivers Coalition, Inc. ("WVRC" or Plaintiff) objects to this instruction as the overly broad, not proportional to the discovery needs of the case, and expanding the requirements of the Federal Rules of Civil Procedure. WVRC provides answers herein that are based on facts and information reasonably available to WVRC's Executive Director, Board of Directors, current employees, attorneys of record, testifying expert witnesses, and designated standing witness members.

2.      All objections to interrogatories herein shall be made in writing and delivered to counsel of record for Chemours, on or before the date set for responses to such interrogatories.

3.      When used in the course of an enumeration of items as to which documents or information are requested, the words "and" and "or" are to be construed as requesting documents or information as to each items in the enumeration, the same as if the entire interrogatory had been addressed solely to that item.

4.      Whenever an interrogatory herein requires you to describe an act or action, omission, meeting, conference, discussion, occurrence, happening, instance or event, you are to give a full description thereof, including a statement setting forth (i) the date and place thereof; (ii) the identity of each oral communication involved and each document which refers to or which was prepared or made during the course or as a consequence thereof; and (iii) the identity of all persons who were witness or participants.

5.      With regard to each interrogatory, should the answer require the identification of a person or entity, state, to the extent known, the (i) person or entity's full name, (ii) present or last known business and home addresses, (iii) occupation, employer, and position, (iv) telephone number and e-mail address, and (v) the relationship, if any, to Plaintiff of each such person or entity.

6.      Whenever an interrogatory calls for information with respect to "each" one of a particular type or class of matters, events, persons, or entities, of which there is more than one, you are required to separately list, set forth, or identify for each thereof all requested information.

7.      With regard to each interrogatory, should the answer require the identification of documents, state, to the extent known, the (i) type of document (e.g., memo, e-mail, text message,

etc.), (ii) general subject matter, (iii) date of the document, (iv) author(s), addressee(s), and recipient(s), and (v) document production number.

8.     If documents are being produced in lieu of answers pursuant to Fed. R. Civ. P. 33(d), or if Plaintiff's answer can be found in documents produced in response to a specific document request, identify, by document production number or similar means, the specific documents wherein the answer is located and, unless apparent on the face of the document, state where within the document the answer can be found.

9.     If you or your counsel asserts that any information or response herein requested is privileged or otherwise protected from discovery, identify and describe the documents in compliance with Federal Rule of Civil Procedure 26(b)(5) and produce a privilege log in accordance with federal rules and practices.

10.     For the convenience of the Court and the parties, each interrogatory should be quoted in full immediately preceding the response.

11.     These interrogatories are continuing in nature. If you receive or otherwise become aware of information responsive to any interrogatory after you have served your answers to these interrogatories, you must promptly supplement your answers to these interrogatories to provide such information, as required by Federal Rule of Civil Procedure 26(e).

## INTERROGATORIES

**INTERROGATORY NO. 1:**     Please describe the irreparable harm WVRC contends it will likely suffer if the Court does not enter the permanent injunction WVRC seeks in this case.

**ANSWER:** Objection. WVRC objects to this Interrogatory (which is technically Defendant's 14th Interrogatory) as calling for a legal conclusion as it seeks information regarding

1

"irreparable harm" within the context of a permanent injunction. WVRC objects to this Interrogatory to the extent it seeks an information about "irreparable harm" to WVRC as the organization itself, as opposed through WVRC's membership, the environment, or the public at large. WVRC interprets this Interrogatory as seeking information about irreparable harm (i.e., harm that cannot be remedied by monetary damages) that WVRC contends it, as an organization separate and removed from its membership, will likely suffer if the Court does not require Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA. Subject to that interpretation and without waiving its objections, WVRC answers as follows:

WVRC does not contend that WVRC, as a distinct legal entity separate and removed from its membership, will itself suffer irreparable harm if the Court does not issue a permanent injunction requiring Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA.

**INTERROGATORY NO. 2:**    Please describe the manner in which WVRC contends it will suffer irreparable harm if the Court does not enter the permanent injunction WVRC seeks in this case.

**ANSWER:** Objection. WVRC objects to this Interrogatory (which is technically Defendant's 15th Interrogatory) as calling for a legal conclusion as it seeks information regarding "irreparable harm" within the context of a permanent injunction. WVRC objects to this Interrogatory to the extent it seeks an information about "irreparable harm" to WVRC as the organization itself, as opposed through WVRC's membership, the environment, or the public at large. WVRC interprets this Interrogatory as seeking information about the manner in which

2

WVRC contends it, as an organization separate and removed from its membership, will likely suffer irreparable harm (i.e., harm that cannot be remedied by monetary damages) if the Court does not require Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA. Subject to that interpretation and without waiving its objections, WVRC answers as follows:

WVRC does not contend that WVRC, as a distinct legal entity separate and removed from its membership, will itself suffer irreparable harm if the Court does not issue a permanent injunction requiring Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA.

**INTERROGATORY NO. 3:**    Please describe the irreparable harm WVRC contends its members will likely suffer if the Court does not enter the permanent injunction WVRC seeks in this case.

**ANSWER:** WVRC objects to this Interrogatory (which is technically Defendant's 16th Interrogatory) as calling for a legal conclusion as it seeks information regarding "irreparable harm" within the context of a permanent injunction. WVRC objects to this Interrogatory to the extent it seeks information about WVRC's entire membership. WVRC objects to this Interrogatory to the extent it calls for expert opinion testimony, the subject of which will be disclosed pursuant to the Scheduling Order in this Litigation. WVRC interprets this Interrogatory as seeking information about the irreparable harm (i.e., harm that cannot be remedied by monetary damages) WVRC contends its standing witnesses in this Litigation, Charlise Robinson and Monty Fowler, will likely suffer if the Court does not require Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA. Subject to that interpretation and without

waiving its objections, WVRC responds as follows:

WVRC contends its standing witnesses will likely suffer the following forms of irreparable harm if the Court does not require Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA:

1. Harm to identified environmental, aesthetic, and recreational interests in the Ohio River. Plaintiff incorporates relevant deposition testimony provided by Ms. Robinson into this Answer.

2. Harm to the designated uses of the Ohio River as a drinking water resource upon which Ms. Robinson and Mr. Fowler rely, as determined by WVDEP when establishing the water quality-based effluent limitation for HFPO-DA and PFOA in Chemours's NPDES Permit.

3. Harm to designated uses of the Ohio River as a drinking water resource upon which Ms. Robinson and Mr. Fowler rely, and, for Ms. Robinson specifically, to the Lubeck wellfield which is influenced by the Ohio River, as evidenced by PFOA levels and HFPO-DA levels in those water sources above the MCLG for those substances. WVRC hereby incorporates into this Answer the expert witness testimony proffered by Dr. Hoagland in her Declaration, ECF No. 18-3, at the Preliminary Injunction hearing, in Dr. Hoagland's July 4, 2025 Expert Report, and in any forthcoming Supplemental Expert Report and related trial testimony. WVRC also hereby incorporates into this Answer the levels of HFPO-DA and PFOA in the Ohio River and in the Lubeck wellfield that WVRC has provided in its Answer to Interrogatory No. 5.

4. Increased risk of harm to Ms. Robinson and Mr. Fowler through exposures or

potential exposures to HFPO-DA and PFOA by use of water provided by the Lubeck Public Service District and West Virginia American Water Huntington, respectively, that rely upon the Ohio River (which is contaminated with PFOA and HFPO-DA) as a drinking water resource. Plaintiff incorporates into this Answer the expert witness testimony of Dr. Schlezinger in her Declaration, ECF No. 19, at the Preliminary Injunction Hearing, in Dr. Schlezinger's July 4, 2025 Expert Report, in Dr. Schlezinger's July 21, 2025 Rebuttal Report, and in any forthcoming Supplemental Report and related deposition and trial testimony.

5.  Specifically as to Ms. Robinson, increased harm or risk of harm due to actual exposure of HFPO-DA at levels that exceed the Maximum Contaminant Level Goal ("MCLG") of 10 part per trillion in the Lubeck Public Service District finished drinking water supply and actual exposures to PFOA levels of 179.5 ppt on March 19, 2024. Plaintiff incorporates into the expert witness testimony of Dr. Schlezinger in her Declaration, ECF No. 19, at the Preliminary Injunction Hearing, in Dr. Schlezinger's July 4, 2025 Expert Report, in Dr. Schlezinger's July 21, 2025 Rebuttal Report, and in any forthcoming Supplemental Report and related deposition and trial testimony. WVRC further and specifically incorporates Dr. Schlezinger's expert opinion that Ms. Robinson's existing body burden of PFOA increases her risk of harm because of her exposure to HFPO-DA at levels exceeding the MCLG, because Ms. Robinson is "starting with already an increased health risk" and because exposure to multiple forms of PFAS compounds together "produce combined toxicity that is greater than the toxicity of each individual PFAS." *See, e.g.,* May 22 Tr. 205:23-206:1,

240:14-25.

**INTERROGATORY NO. 4:**        Please describe the manner in which WVRC's members will suffer irreparable harm if the Court does not enter the permanent injunction WVRC seeks in this case.

**ANSWER:** WVRC objects to this Interrogatory (which is technically Defendant's 17th Interrogatory) as calling for a legal conclusion as it seeks information regarding "irreparable harm" within the context of a permanent injunction. WVRC objects to this Interrogatory to the extent it seeks information about WVRC's entire membership. WVRC objects to this Interrogatory to the extent it calls for expert opinion testimony, the subject of which will be disclosed pursuant to the Scheduling Order in this Litigation. WVRC objects that the term "manner" is vague, undefined, and subject to multiple different factual and legal definitions. WVRC interprets this Interrogatory as seeking information about how WVRC contends its standing witnesses in this Litigation, Charlise Robinson and Monty Fowler, will suffer irreparable harm (i.e., harm that cannot be remedied by monetary damages) if the Court does not require Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA. Subject to that interpretation and without waiving its objections, WVRC responds as follows:

WVRC hereby incorporates its Answer above to Interrogatory No. 3.

WVRC further incorporates into this Answer the expert witness testimony proffered by Dr. Hoagland in her Declaration, ECF No. 18-3, at the Preliminary Injunction hearing, in Dr. Hoagland's July 4, 2025 Expert Report, and in any forthcoming Supplemental Expert Report and related trial testimony. To summarize, Dr. Hoagland opines that the HFPO-DA levels measured in the Ohio River and in downstream public water districts (including but not limited to Lubeck,

Cincinnati, and Louisville) are attributable to the unlawful discharges of HFPO-DA at the Washington Works Plant.

Furthermore, as to Lubeck, WVRC answers that there is an exposure pathway that runs from the Washington Works Plant's outfalls, to the Ohio River, to Lubeck's well field, to Lubeck's finished drinking water, and finally to Ms. Robinson's use of that water. HFPO-DA has been detected and measured at each of those pathway locations and PFAS have been detected in Ms. Robinson's blood. The Lubeck Public Service District draws approximately 39% of its water from induced infiltration from the Ohio River.

Plaintiff incorporates into this Answer the expert witness testimony of Dr. Schlezinger regarding the increased risk to human health from exposure to PFOA and HFPO-DA, which can be found in her Declaration, ECF No. 19, at the Preliminary Injunction Hearing, in Dr. Schlezinger's July 4, 2025 Expert Report, in Dr. Schlezinger's July 21, 2025 Rebuttal Report, and in any forthcoming Supplemental Report and related deposition and trial testimony.

**INTERROGATORY NO. 5:**     Please describe the irreparable harm the public and/or environment that WVRC contends either will likely suffer if the Court does not enter the permanent injunction WVRC seeks in this case.

**ANSWER:** WVRC objects to this Interrogatory (which is technically Defendant's 18th Interrogatory) as calling for a legal conclusion as it seeks information regarding "irreparable harm" within the context of a permanent injunction. WVRC objects to this Interrogatory to the extent it calls for expert opinion testimony, the subject of which will be disclosed pursuant to the Scheduling Order in this Litigation. WVRC interprets this Interrogatory as requesting information about the irreparable harm (i.e., harm that cannot be remedied by monetary damages) WVRC

7

alleges will likely occur to the public and the environment if the Court does not require Chemours to achieve immediate compliance with its NPDES Permit effluent limitations for HFPO-DA and PFOA. Subject to that interpretation and without waiving its objections, WVRC responds as follows:

**Environment:** WVRC contends there will be irreparable harm to the environment caused by Chemours's unlawful discharges of HFPO-DA and PFOA at the Washington Works Plant unless the Court enters a permanent injunction requiring Chemours to achieve immediate compliance with its NPDES Permit. HFPO-DA and PFOA are "forever chemicals" that do not break down naturally in the environment. This means that once they are discharged by Chemours into the Ohio River at levels exceeding the NPDES Permit limits, they "forever" and negatively change the chemistry and quality of the Ohio River, causing environmental injuries of that cannot be remedied by monetary damages. Environmental injury, by its very nature, is irreparable. *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 545 (1987).

Evidence of this irreparable harm to the environment includes evidence that drinking water *sources* are impaired with PFOA or HFPO-DA levels above what EPA considers safe as determined by the MCLG. Chemours has recorded the following HFPO-DA levels above 10 ppt in the Ohio River downstream of the Washington Works Plant and 0.5 miles upstream of the Lubeck wellfield (at down-east, down-mid, and down-west locations across the River, and at bottom, mid-depth, and surface levels at those locations) on the following dates:

| Date | HFPO-DA (ppt) | Source(s) |
|---|---|---|
| 9/28/2022 | 14 | ECF No. 66-15 (WVRC-CC-00001814) |
| 9/28/2022 | 14 | ECF No. 66-15 (WVRC-CC-00001814) |
| 9/28/2022 | 15 | ECF No. 66-15 (WVRC-CC-00001814) |
| 2/6/2023 | 19.5 | ECF No. 66-15 (WVRC-CC-00001814) |
| 2/6/2023 | 18.8 | ECF No. 66-15 (WVRC-CC-00001814) |
| 2/6/2023 | 15.5 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 20.1 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 15.4 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 12.7 | ECF No. 66-15 (WVRC-CC-00001814) |

| 11/18/2024 | 10.7 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 12.5 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 10.2 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 11.4 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 17.3 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 18.3 | ECF No. 66-15 (WVRC-CC-00001814) |
| 11/18/2024 | 15.5 | ECF No. 66-15 (WVRC-CC-00001814) |
| 2/4/2025 | 10 | ECF No. 66-15 (WVRC-CC-00001814) |
| 3/11/2025 | 50 | Finley July 14 report at 25–26 |

Chemours has also recorded the following PFOA levels above 4 ppt in the Ohio River downstream of the Washington Works Plant and 0.5 miles upstream of the Lubeck wellfield (at down-east, down-mid, and down-west locations across the River, and at bottom, mid-depth, and surface levels at those locations) on the following dates:

| Date | PFOA (ppt) | Source(s) |
| --- | --- | --- |
| 6/1/2022 | 4 | WVRC-CC-00069853 |
| 6/30/2022 | 9 | WVRC-CC-00069853 |
| 8/17/2022 | 5.1 | WVRC-CC-00069853 |
| 9/28/2022 | 4.3 | WVRC-CC-00069853 |
| 9/28/2022 | 4.3 | WVRC-CC-00069853 |
| 9/28/2022 | 4.2 | WVRC-CC-00069853 |
| 11/2/2022 | 4.6 | WVRC-CC-00069853 |
| 11/2/2022 | 4.4 | WVRC-CC-00069853 |
| 11/2/2022 | 4.3 | WVRC-CC-00069853 |
| 12/12/2022 | 4.6 | WVRC-CC-00069853 |
| 12/12/2022 | 5 | WVRC-CC-00069853 |
| 12/12/2022 | 4.1 | WVRC-CC-00069853 |
| 2/6/2023 | 13.5 | WVRC-CC-00072232 |
| 2/6/2023 | 16.4 | WVRC-CC-00072232 |
| 2/6/2023 | 15.8 | WVRC-CC-00072232 |
| 2/6/2023 | 8.14 | WVRC-CC-00072232 |
| 2/6/2023 | 8.88 | WVRC-CC-00072232 |
| 2/6/2023 | 8.88 | WVRC-CC-00072232 |
| 10/10/2024 | 5.64 | WVRC-CC-00072232 |
| 10/10/2024 | 5.09 | WVRC-CC-00072232 |
| 10/10/2024 | 5.64 | WVRC-CC-00072232 |
| 10/10/2024 | 4.84 | WVRC-CC-00072232 |
| 10/10/2024 | 4.98 | WVRC-CC-00072232 |
| 10/10/2024 | 4.99 | WVRC-CC-00072232 |
| 10/10/2024 | 5.57 | WVRC-CC-00072232 |
| 10/10/2024 | 4.86 | WVRC-CC-00072232 |
| 10/10/2024 | 4.83 | WVRC-CC-00072232 |
| 10/10/2024 | 4.88 | WVRC-CC-00072232 |
| 10/10/2024 | 4.67 | WVRC-CC-00072232 |
| 11/18/2024 | 6.29 | WVRC-CC-00072232 |
| 11/18/2024 | 5.73 | WVRC-CC-00072232 |
| 11/18/2024 | 5.6 | WVRC-CC-00072232 |
| 11/18/2024 | 5.38 | WVRC-CC-00072232 |

| | | |
|---|---|---|
| 11/18/2024 | 5.01 | WVRC-CC-00072232 |
| 11/18/2024 | 5.51 | WVRC-CC-00072232 |
| 11/18/2024 | 6.1 | WVRC-CC-00072232 |
| 11/18/2024 | 6.88 | WVRC-CC-00072232 |
| 11/18/2024 | 6.04 | WVRC-CC-00072232 |
| 12/6/2024 | 7.34 | WVRC-CC-00072232 |
| 12/6/2024 | 7.59 | WVRC-CC-00072232 |
| 12/6/2024 | 7.03 | WVRC-CC-00072232 |
| 12/6/2024 | 4.03 | WVRC-CC-00072232 |
| 12/6/2024 | 4.14 | WVRC-CC-00072232 |
| 12/6/2024 | 4.38 | WVRC-CC-00072232 |
| 12/6/2024 | 4.94 | WVRC-CC-00072232 |
| 12/6/2024 | 4.58 | WVRC-CC-00072232 |
| 12/6/2024 | 4.95 | WVRC-CC-00072232 |
| 2/4/2025 | 9.2 | WVRC-CC-00072232 |
| 2/4/2025 | 9.38 | WVRC-CC-00072232 |
| 2/4/2025 | 8.77 | WVRC-CC-00072232 |
| 2/4/2025 | 4.01 | WVRC-CC-00072232 |
| 2/4/2025 | 4.02 | WVRC-CC-00072232 |
| 2/4/2025 | 4.21 | WVRC-CC-00072232 |
| 2/4/2025 | 14 | WVRC-CC-00072232 |
| 2/4/2025 | 12.5 | WVRC-CC-00072232 |
| 2/4/2025 | 10.7 | WVRC-CC-00072232 |

From March 2023 to present, Lubeck's well field prior to any treatment has had HFPO-DA levels ranging from 29 ppt to 62 ppt. WVRC-CC-00001517–19, WVRC-CC-00044995, WVRC-CC-00069921. Chemours is the only known source of HFPO-DA within 100 miles of its Washington Works Plant that could account for the levels of that chemical found at Lubeck. May 21 Tr. 67:3–6; May 23 Tr. 25:14–26:4, 55:8–17, 62:12–15, 71:14–72:7. From January 2022 to present, Lubeck's well field prior to any treatment has had PFOA levels ranging from 620 ppt to 1800 ppt. WVRC-CC-00001517–20, WVRC-CC-00044995, WVRC-CC-00069921.

Concentrations of HFPO-DA in the Ohio River have also exceeded 10 ppt on multiple occasions as far downstream as Cincinnati and Louisville, as explained in Mr. Swertfeger's and Mr. Goodmann's declarations. ECF Nos. 66-16, 66-17. Chemours has not identified an alternative source other than the Washington Works Plant for the HFPO-DA seen at these locations. These levels of HFPO-DA in the Ohio River as far downstream as Louisville are further evidence of environmental degradation as a result of Chemours's unlawful discharges.

10

Plaintiff also incorporates into its Answer the expert witness testimony proffered by Dr. Hoagland in her Declaration, ECF No. 18-3, at the Preliminary Injunction hearing, in Dr. Hoagland's July 4, 2025 Expert Report, and in any forthcoming Supplemental Expert Report and related trial testimony.

**Public:** WVRC incorporates its Answer to Interrogatory No. 3, as the public is likely to suffer similar irreparable harm that Ms. Robinson and/or Mr. Fowler may experience if the Court does not enter a permanent injunction.

WVRC contends there will be irreparable harm to the public caused by Chemours's unlawful discharges of HFPO-DA and PFOA at the Washington Works Plant unless the Court enters a permanent injunction requiring Chemours to achieve immediate compliance with its NPDES Permit. That irreparable harm stems from the contamination and impairment of a drinking water source—the Ohio River (and other drinking water sources that are influenced by the Ohio River)—that millions of people rely upon as a source for drinking water. Plaintiff incorporates into its Answer the expert witness testimony proffered by Dr. Hoagland in her Declaration, ECF No. 18-3, at the Preliminary Injunction hearing, in Dr. Hoagland's July 4, 2025 Expert Report, and in any forthcoming Supplemental Expert Report and related trial testimony. HFPO-DA and PFOA are forever chemicals, meaning they will not naturally degrade or break down in the environment. This means that once they are discharged into the Ohio River at levels exceeding the NPDES Permit limits, they have caused irreparable injury to the public by polluting a designated drinking water resource upon which the public relies.

WVRC also contends that there will be irreparable harm to the public because not all drinking water influenced by the Ohio River currently has treatment in place capable of treating PFAS. *See generally* ECF No. 66-8. Further, even if treatment is in place capable of removing

PFAS, those treatment systems can and do fail. The typical treatment systems in place—granulated activated carbon ("GAC") treatment—are not as effective as removing HFPO-DA (compared to PFOA) according to Chemours's own witness Mr. Hartten. May 22 Tr. 72:23–73:3; *see also* ECF No. 55, Joint Stip. ¶ 14 (six occasions where HFPO-DA levels exceed 10 ppt at Lubeck in finished water despite GAC treatment system in place). When treatment systems fail, the public is not always notified or there is a lag time in notifying the public. Joint Stip. ¶ 13 (public notification of March 2024 treatment failure at Lubeck not made until June 2024); *see also* May 22 Tr. 73:9–16 (Hartten). Thus, the public cannot know if its drinking water is contaminated with PFAS above safe levels until it is too late (i.e., after they have already been exposed to the contaminated drinking water).

WVRC also contends there will specifically be irreparable harm to the public on the Lubeck water system because actual, harmful levels of HFPO-DA and PFOA have been found in the treated drinking water at Lubeck on multiple occasions and the Lubeck population already has a high body burden of PFAS from their past exposure to PFAS emitted from the Washington Works Plant. In 2022, the Lubeck Public Service District measured levels of PFOA in its finished water above 4 ppt on multiple occasions, including: (1) on September 19, 2022, with measurements of 19 ppt and 6.5 ppt at two separate lag beds, (2) on October 19, 2022, with measurements of 35 and 14 ppt at two separate lag beds, and (3) on November 14, 2022, with measurements of 24 and 47 ppt at two separate lag beds. WVRC-CC-00046410. In June of 2024, the Lubeck Public Service District informed its customers, in compliance with the EPA Unregulated Contaminate Monitoring Rule 5 (UCMR-5), that PFAS sampling occurred at entry points to Lubeck's water distribution system. The notice informed customers that, on March 19, 2024, it measured PFOA levels of 179.5 ppt. The notice also stated "**DO NOT BOIL THE WATER**," "there are no immediate requirements

for Lubeck's customers regarding the sampling results," and "customers SHOULD NOT boil their water to remove PFAS. Excessive boiling can make present PFAS levels more concentrated and does not remove any contaminants that may be present." Further, from March 2023 to November 2024, the Lubeck Public Service District measured the following levels of HFPO-DA in its finished water:

| Sample Date | Sample 1 (ng/L) | Sample 2 (ng/L) |
|---|---|---|
| 3/20/2023 | <1.8 | <1.9 |
| 4/17/2023 | 5.8 | 10 |
| 5/25/2023 | <1.8 | <1.8 |
| 6/21/2023 | <1.8 | <1.8 |
| 7/24/2023 | <1.8 | <1.8 |
| 8/22/2023 | <1.9 | <1.8 |
| 9/18/2023 | 8.2 | 5.2 |
| 10/16/2023 | 15 | 14 |
| 11/13/2023 | 24 | 23 |
| 12/18/2023 | <1.9 | <1.9 |
| 1/16/2024 | <1.9 | <1.9 |
| 2/19/2024 | <1.8 | <1.9 |
| 3/18/2024 | 3.4 | <2.0 |
| 4/9/2024 | <1.9 | 13 |
| 4/29/2024 | 2.7 | 30 |
| 5/20/2024 | 11 | 40 |
| 6/17/2024 | <1.9 | <1.9 |
| 7/15/2024 | <1.8 | <1.8 |
| 8/19/2024 | <1.9 | <2.0 |
| 9/17/2024 | 3.5 | 6.2 |
| 10/21/2024 | 20 | 14 |
| 11/20/2024 | <1.9 | <1.9 |
| 12/16/2024 | <2.0 | <2.0 |
| 1/20/2025 | <2.0 | <2.0 |
| 2/18/2025 | 5.6 | 2.3 |
| 3/17/2025 | 14 | 22 |
| 4/21/2025 | <2.0 | <2.0 |
| 5/19/2025 | <1.9 | <1.9 |

Exposure to HFPO-DA through drinking water can result in "health effects . . . on the liver, kidneys, the immune system, [and] development of offspring" with the liver being especially vulnerable to HFPO-DA exposure. ECF No. 65-22 at 2. In its 2018 fact sheet for the Permit, WVDEP stated that, although there were no federal health guidelines at that time for HFPO-DA, "laboratory studies on animals show negative effects to the liver and blood, along with cancer of

the liver, pancreas, and testicles." Joint Stip. ¶ 4. WVDEP set limits for HFPO-DA in the NPDES Permit based on a health goal of 140 nanograms per liter (ng/L) or parts per trillion (ppt) "to be protective of the State's narrative water quality criteria for human health and the designated uses of the Ohio River." *Id.*

Similarly, studies indicate that exposure to PFOA "may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)." ECF No. 65-2 at 15. EPA established a human health advisory level of 70 nanograms per liter (ng/L) or parts per trillion (ppt) for PFOA + PFOS combined. WVDEP used that value to set the Permit limits "to be protective of the State's narrative water quality criteria for human health and the designated uses of the Ohio River."

The PFOA and HFPO-DA effluent limitations in the NPDES Permit are "water-quality based effluent limitations" that are designed to protect the Ohio River as a drinking water resource. By discharging more PFOA and HFPO-DA into the Ohio River than is allowed under the NPDES Permit, this is further evidence that Chemours is causing irreparable harm to the public by polluting the public's drinking water source and by exposing the public to levels of HFPO-DA and PFOA that may, and do, cause increased risk of harm. These harms cannot be remedied by money damages.

Plaintiff incorporates into this Answer the expert witness testimony of Dr. Schlezinger on harms to human health from exposure to HFPO-DA and PFOA, which can be found in her Declaration, ECF No. 19, at the Preliminary Injunction Hearing, in Dr. Schlezinger's July 4, 2025 Expert Report, in Dr. Schlezinger's July 21, 2025 Rebuttal Report, and in any forthcoming

14

Supplemental Report and related deposition and trial testimony.

DATED: July 30, 2025                               Respectfully,

                                                  **/s/ Amanda Demmerle**
                                                  AMANDA DEMMERLE (WVBN 13930)
                                                  DEREK TEANEY (WVBN 10223)
                                                  APPALACHIAN MOUNTAIN ADVOCATES, INC.
                                                  P.O. Box 507
                                                  Lewisburg, WV 24901
                                                  Telephone: (757) 650-2774
                                                  Email: ademmerle@appalmad.org
                                                  dteaney@appalmad.org

                                                  JAMES M. HECKER (*pro hac vice*)
                                                  DANIEL C. SNYDER (*pro hac vice*)
                                                  PUBLIC JUSTICE
                                                  1620 L Street, N.W. Suite 630
                                                  Washington, DC 20036
                                                  (202) 797-8600 ext. 225
                                                  Email: jhecker@publicjustice.net
                                                  dsnyder@publicjustice.net

                                                  *Counsel for Plaintiff*

## VERIFICATION

I, Autumn Crowe, being first duly sworn, hereby state as follows:

1. I am the Deputy Director of Plaintiff West Virginia Rivers Coalition, Inc.

2. I am authorized by Plaintiff to execute this Verification of Plaintiff's Objections and Answers to Chemours's Second Set of Interrogatories to Plaintiff.

3. The facts and answers stated herein have been assembled by authorized employees and attorneys of the Plaintiff.

4. The facts and answers stated herein are true and correct to the best of my information and belief.



Autumn Crowe

DATE: 7/30/25

Taken, subscribed, and sworn to before the undersigned notary public this 30th Day of July, 2025.

My commission expires: 2-15-2029

Christy L Carver

Notary Public

[SEAL]

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
CHRISTY F. CARVER
GREENBRIER COUNTY PUBLIC LIBRARY
152 ROBERT W. McCORMICK DRIVE
LEWISBURG, WEST VIRGINIA 24901
MY COMMISSION EXPIRES FEBRUARY 15, 2029

17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

**WEST VIRGINIA RIVERS COALITION, INC.**

     **Plaintiff,**

**v.**                                     **Civil Action No. 2:24-cv-00701**

**THE CHEMOURS COMPANY FC, LLC,**

     **Defendant.**

### CERTIFICATE OF SERVICE

I, Amanda Demmerle, do hereby certify that, on July 30, 2025, I e-mailed a true and correct copy of PLAINTIFF WEST VIRGINIA RIVERS COALITION, INC.'S OBJECTIONS AND ANSWERS TO
CHEMOURS' SECOND SET OF INTERROGATORIES TO WEST VIRGINIA RIVERS COALITION, INC.to the following participants:

KIRK R. AUVIL
The Employment Law Center, PLLC
1208 Market Street
Parkersburg, WV  26101
theemploymentlawcenter@gmail.com

D. DAVID ALTMAN
JUSTIN D. NEWMAN
AltmanNewman Co. LPA
15 E. 8th Street
Cincinnati, OH  45202
daltman@environlaw.com
jnewman@environlaw.com

*Counsel for The Little Hocking Water*
*Association, Inc.*

JAMES A. WALLS
Spilman Thomas & Battle, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
(304) 291-7920
jwalls@spilmanlaw.com

CLIFFORD F. KINNEY, JR.
NIALL A. PAUL
JOSEPH CREIGHTON UNGER
DAVID L. YAUSSY
JOSEPH A. FORD
Spilman Thomas & Battle, PLLC
P.O. Box 273
Charleston, WV 25301
(304) 340-3844
ckinney@spilmanlaw.com
npaul@spilmanlaw.com
junger@spilmanlaw.com
dyaussy@spilmanlaw.com
jford@spilmanlaw.com

*Counsel for The Chemours Company FC, LLC*

/s/ **Amanda P. Demmerle**
AMANDA P. DEMMERLE (WVBN 13930)