IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WEST VIRGINIA RIVERS COALITION, INC.,

        Plaintiff,

and

LITTLE HOCKING WATER ASSOCIATION, INC.

        Intervenor-Plaintiff,

v.                                         CIVIL ACTION NO. 2:24-cv-00701

THE CHEMOURS COMPANY FC, LLC,

        Defendant.

**ORDER**

Pending before the court is Defendant Chemours Company FC, LLC's Motion for Stay of Proceedings and Deadlines Pending the Fourth Circuit's Decision on Appeal, [ECF No. 205]. Plaintiff West Virginia Rivers Coalition, Inc. ("WVRC") has responded, [ECF No. 209], and Intervenor Plaintiff Little Hocking Water Association, Inc. ("LHWA") has responded, [ECF No. 210]. Because the issues of the Defendant's appeal are central to the litigation, the motion, [ECF No. 205], is **GRANTED**.

Under the court's expedited scheduling order, the parties filed their motions for summary judgment on August 6, 2025. [ECF Nos. 175, 177, 179, 181]. Among other things, Defendant argues that Plaintiff WVRC lacks standing, [ECF No. 176, at 6–14], and that Plaintiff LHWA has not suffered irreparable harm, [ECF No. 178, at 11–15]. In its motion, Plaintiff WVRC argues that it has standing and that Defendant's unpermitted discharges cause irreparable harm to it and the

public. [ECF No. 180, at 6–12; 16–20]. Plaintiff LHWA makes similar arguments on standing and irreparable harm. [ECF No. 182, at 6–12; 14–18].

The next day on August 7, 2025, the court granted the Plaintiff's motion for a preliminary injunction. [ECF No. 184]; *West Virginia Rivers Coalition, Inc. v. Chemours Company FC, LLC*, --- F. Supp. 3d ---, 2025 WL 2255032 (S.D. W. Va. Aug. 7, 2025) ("*Chemours*"). The court held that Plaintiff WVRC had Article III standing to sue. *Chemours*, 2025 WL 2255032, at *5–10. The court also held that the Plaintiff—as well as the public—had suffered irreparable harm and would continue to suffer irreparable harm because of the Defendant's conduct. *Id.* at *11–17. That same day the Defendant filed its Notice of Appeal, [ECF No. 186].

On August 16, 2025, the parties filed their responses—relying on or arguing against the court's opinion granting the preliminary injunction. [ECF Nos. 200–204]. And on August 21, 2025, the parties filed their replies—again arguing over the same issues resolved by the court's granting of a preliminary injunction. [ECF Nos. 211–214].

The issues of standing and irreparable harm are central to the court's August 7, 2025 Memorandum Opinion, the parties' summary judgment motions, and the Defendant's appeal. Therefore, the court no longer has jurisdiction over those aspects of the case. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023). "An appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Id.* (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). The district court, being without control, "must refrain from further action on those aspects of the case involved in the appeal until the appeal is completed." *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F. 4th 265,

269–71 (4th Cir. 2025) (holding that *Coinbase* extends far beyond the cryptocurrency or arbitration context).[1]

Here, Article III standing[2] and irreparable harm analyses are challenged. If an appeal asks "'whether the litigation may go forward in the district court,' then 'the entire case is essentially "involved in the appeal."'" *Id.* at 269 (quoting *Coinbase*, 599 U.S. at 741). Article III standing is a threshold question of whether the plaintiff should be in front of the district court at all. *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019) ("Standing implicates the court's subject matter jurisdiction."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Therefore, the issue of standing—whether the litigation can proceed in federal court—is "involved in the appeal" and the stay must be granted.

Similarly, I find it difficult to accept the Plaintiff's version of a narrow irreparable harm question. Plaintiff argues that the true question on appeal is "whether WVRC or the public would suffer irreparable harm before the resolution of the case on the merits." [ECF No. 209, at 11]. The court's analysis of irreparable harm is not so limited. *Chemours*, 2025 WL 2255032, at *13–14,

---

[1] Plaintiffs argue that *Coinbase*'s scope is limited. A similar argument has already been rejected by the Fourth Circuit. *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F. 4th 265, 269–71 (4th Cir. 2025). There the court held that although *Coinbase* was about arbitration, "this does not mean it was *only* a case about arbitration." *Id.* at 270–71 (emphasis in original). Indeed, "its reasoning applies beyond cryptocurrency platforms. Distinctions require meaningful differences to matter; a decision's rationale binds [courts] even if some immaterial facts differ." *Id.* at 271. The Fourth Circuit also cited Justice Gorsuch: "It is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases." *Id.* at 271 (quoting *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020)). Here, *Coinbase*'s rationale "requires an automatic stay of district court proceedings that relate to any aspect of the case involved in the appeal." 599 U.S. at 744.

[2] Plaintiff WVRC's argument about standing is curious. Plaintiff argues that another associational member, Monty Fowler, satisfies standing. According to Plaintiff, the court can continue to the merits because the court has never determined if that member has standing, and the issue is therefore not on appeal. [ECF No. 209, at 11]. There are two issues with that. First, Monty Fowler (as a member potentially able to satisfy standing for WVRC) has never been before the court until Plaintiff's recent summary judgment motion. It seems dubious that the Plaintiff could resuscitate litigation—failing a standing inquiry at the preliminary injunction stage but then later "curing" standing with a different member at the summary judgment stage. Second, the court's analysis of standing, the caselaw, and precedent would equally and fully apply to any other member put forth by the Plaintiff.

*17 ("Based on the purposes of the CWA and Defendant's permit, excess discharge of HFPO-DA clearly causes irreparable harm." "Instead, Ms. Robinson and all those who use the Ohio River, suffer irreparable harm with each incremental exposure to HFPO-DA." "The continued exposure to a recognized human health hazard constitutes irreparable harm within the meaning of *Winter* where injury accumulates with each passing day." "The public faces an irreparable harm that the court can only address through injunction."). Given the court's earlier ruling on irreparable harm, it is impossible to continue to the merits of this case without employing this same analysis for the irreparable harm of a permanent injunction. They will, and they do, necessarily overlap, and the court must grant a stay.

Even if the stay is not automatic, I would discretionarily grant it. A stay will promote judicial economy because resolution of the Defendant's appeal will settle threshold questions before the district court goes any further. Both parties will be saved from the hardship of pursuing litigation if the Fourth Circuit disagrees with the district court's analysis. Further, the Plaintiffs will not experience any prejudice as the injunction will remain in place.

Plaintiff WVRC's concerns about an impending consent decree or intervention by the United States are not persuasive. First, the executive branch's intervention has always been a possibility, even long before Plaintiff WVRC filed its complaint, which was some time after documented exceedances. Second, although it may not be an ideal outcome for the Plaintiffs, the Clean Water Act does foresee and indeed favors government action. The Supreme Court has observed that *typically* the government would intervene, enforce its permit, and compel the polluter to lower its discharge. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 60 (1987) ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action.");

*Ohio Valley Env't Coal. v. Fola Coal Co., LLC*, 845 F.3d 133, 145 (4th Cir. 2017) ("For Congress enacted the citizen suit provision of the Clean Water Act to address situations, like the one at hand, in which the traditional enforcement agency declines to act."); *West Virginia Highlands Conservancy, Inc. v. Huffman*, 625 F.3d 159, 169 (4th Cir. 2010) ("[T]he CWA provides ample mechanisms for other parties to fill the void" of enforcement.). 33 U.S.C. §1365. Plaintiffs here have admirably stepped into the shoes of the United States, but that does not mean that the government has lost its ability to intervene.

Accordingly, the Defendant's motion for stay, **[ECF No. 205],** is **GRANTED**, and the case is **STAYED**. The preliminary injunction will **REMAIN** in effect. The remaining deadlines of the Amended Scheduling Order are **CANCELLED**. The parties' motions for summary judgement, **[ECF Nos. 175, 177, 179, 181],** are **DENIED without prejudice.** Pending resolution of the Defendant's appeal, a new scheduling order will be entered, and the parties will have an opportunity to file motions for summary judgment.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 22, 2025

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE