**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**WEST VIRGINIA RIVERS COALITION, INC., and**
**LITTLE HOCKING WATER ASSOCIATION, INC.**

**Plaintiffs,**

**v.** **CIVIL ACTION NO. 2:24-cv-00701**

**THE CHEMOURS COMPANY FC, LLC,**

**Defendant.**

**DEFENDANT'S BRIEF IN RESPONSE TO**
**THE COURT'S ORDER, ECF NO. 224**

On August 3, 2026, the Court directed the parties to assess the effect on the above-captioned matter from two recent developments: (1) the Settlement Agreement between Defendant The Chemours Company FC, LLC ("Chemours") and West Virginia Rivers Coalition, Inc. ("WVRC") and (2) the Consent Decree in *United States of America et al. v. The Chemours Company et al.*, No. 2:26-cv-00418 (S.D.W. Va. 2026). ECF No. 224 at 3. Plaintiff-Intervenor Little Hocking Water Association, Inc. ("LHWA") is not a party to the Settlement Agreement. However, the Agreement's terms—paired with the terms of the Consent Decree and its Appendices—are likely to have a determinative effect on this case.[1]

When the Court issued a preliminary injunction in this matter, Chemours complied and continues to implement abatement projects to reduce discharges at its Washington Works facility. Moreover, Chemours is legally obligated to continue pursuing abatement projects at its

[1] At this time, the Consent Decree has been lodged with this Court, and the U.S. Department of Justice ("DOJ") has not yet moved to enter the Consent Decree. DOJ is reviewing comments and will make a determination about whether to move to enter the Consent Decree when that review is complete. Until DOJ moves to enter the Consent Decree, the outcomes noted in this Brief will not be ripe.

Washington Works facility pursuant to the Administrative Order on Consent with the federal government, *see* ECF No. 7-18, and the Consent Decree once the Consent Decree is finalized and entered.

**BACKGROUND**

To briefly recap, this action commenced when former plaintiff WVRC filed its Complaint on December 5, 2024. ECF No. 1. WVRC moved for a preliminary injunction in February 2025, arguing that Chemours violated effluent limits at two outfalls in its Washington Works facility's National Pollutant Discharge Elimination System ("NPDES") Permit, causing irreparable harm. ECF Nos. 7, 8. The Court held a multi-day hearing on WVRC's Motion in May 2025, *see* ECF Nos. 58, 60, 61.

LHWA moved to intervene shortly after the conclusion of the preliminary injunction hearing. ECF Nos. 64, 67. Chemours opposed LHWA's intervention on various grounds, including LHWA lacking legal standing because the alleged injuries to its wellfield are not fairly traceable to Chemours' effluent discharges at issue. ECF No. 80 at 8–9. The Court granted LHWA intervention, while acknowledging that an earlier Southern District of Ohio court opinion left unresolved the "genuine issues of material fact concerning the existence of a water pathway from the Ohio River to the Little Hocking Wellfield." ECF No. 85 at 3 n.1.

The parties underwent discovery, including depositions, expert reports, and written discovery, between April and July 2025. Chemours and LHWA exchanged reports of experts whose professional opinions differed on the key question of whether Chemours' discharges physically impact LHWA's wellfield. The parties then moved for summary judgment on August 6. ECF Nos. 175–82. Chemours and LHWA filed competing motions for partial summary judgment that focused on whether LHWA has been injured, whether its alleged injuries are fairly traceable to Chemours' discharges, and whether its alleged injuries are redressable through this

litigation. *See* ECF Nos. 177, 178, 181, 182. The next day, the Court granted WVRC's Motion for a Preliminary Injunction, ordering Chemours to comply with the hexafluoropropylene oxide-dimer acid ("HFPO-DA") limits in its NPDES Permit for Outlets 002 and 005 at Washington Works. ECF No. 184. Chemours appealed the Preliminary Injunction Order to the Fourth Circuit Court of Appeals. ECF No. 186.

Chemours moved to stay this matter's proceedings because questions of WVRC's irreparable harm and standing, then on appeal, were dispositive issues for trial and WVRC's request for permanent injunctive relief. ECF Nos. 205, 206. Chemours argued in the first instance that the appeal temporarily divested the Court of jurisdiction over the standing and harm issues while the Fourth Circuit made its decision. ECF No. 206 at 5–7. Chemours argued secondarily that, even if the Court were not divested of jurisdiction, the Court nevertheless had discretion to stay the litigation until the Fourth Circuit issued its holding. *Id.* at 7–12.

WVRC and LHWA opposed a stay. ECF Nos. 209, 210. WVRC urged that a consent decree between Chemours and the government could arise during a stay and "pre-empt this case . . . on the grounds of res judicata or mootness." ECF No. 209 at 1–2. "The prospect of a preemptive federal consent decree," WVRC stated, "has hovered over this case since it began." *Id.* at 2. LHWA fully "incorporate[d] WVRC's Opposition" into its own and agreed that WVRC "accurately and concisely capture[d] the law." ECF No. 210 at 1.

The Court stayed this matter in August 2025. ECF No. 216. In granting a stay, the Court denied without prejudice the parties' pending motions for summary judgment. *Id.* at 5. The Court held that the stay would be lifted following the Fourth Circuit's decision. *Id.* The Court also opined that "the executive branch's intervention has always been a possibility" and that, "although

it may not be an ideal outcome for the Plaintiffs, the Clean Water Act does foresee and indeed favors government action." *Id.* at 4.

The parties submitted appeal briefs in September, October, and November 2025 and argued their positions before the Fourth Circuit on March 19, 2026. As WVRC's counsel noted in oral argument to the Fourth Circuit, Chemours "ha[s] complied with the injunction" since its issuance. Oral Argument at 33:19, *W. Va. Rivers Coal., Inc. v. The Chemours Co. FC, LLC*, 178 F.4th 102 (4th Cir. 2026) (No. 25-01924), https://www.ca4.uscourts.gov/OAarchive/mp3/25-1924-20260319.mp3.

The Fourth Circuit issued its decision vacating the preliminary injunction on June 3. *See* ECF Nos. 217–19. On June 24, the United States, West Virginia, and the West Virginia Department of Environmental Protection ("WVDEP") filed a Complaint in *United States of America et al. v. The Chemours Company et al.*, No. 2:26-cv-00418 (S.D.W. Va. 2026). That same day, the governments lodged a Consent Decree in the Court. The Consent Decree's public comment period has closed, and the United States is in the process of reviewing and responding to the comments, including comments submitted by LHWA. Once the United States has responded to public comments, it can recommend to the Court in Case No. 2:26-cv-00418 to enter the Consent Decree in its current form or with changes agreed to by the signatories to the Consent Decree.

WVRC subsequently moved to dismiss its claims in this matter with prejudice on July 10 due to its Settlement Agreement with Chemours. ECF No. 221. The Court granted WVRC's Motion on August 3, 2026, dropping WVRC as a party to this case. ECF No. 224. Chemours now files this Brief in response to the Court's Order. The Consent Decree addresses the same Clean Water Act (33 U.S.C. § 1251 *et seq.*) claims asserted by LHWA against Chemours. If the Consent

Decree is ultimately entered as currently drafted or in a substantially similar form, it will resolve all of the claims asserted by LHWA against Chemours here.

**ARGUMENT**

LHWA has known since at least August 2025 when it responded to Chemours' Motion to Stay that a consent decree between Chemours and the government was a serious possibility. It also understood that a consent decree "might pre-empt this case . . . on the grounds of res judicata or mootness." ECF No. 209 at 1–2; ECF No. 210 at 1. As WVRC noted, "[t]he prospect of a preemptive federal consent decree has hovered over this case since it began." ECF No. 209 at 2. The government action and Consent Decree are thus no surprise to LHWA.

A review of relevant case law, moreover, shows that an intervening government action and consent decree are likely to affect a parallel citizen suit. *See, e.g.*, *Ohio Valley Env't Coal., Inc. v. Hobet Mining, LLC*, No. 3:08-0088, 2008 WL 5377799 (S.D.W. Va. Dec. 18, 2008); *Env't Conservation Org. v. City of Dall.*, 529 F.3d 519 (5th Cir. 2008). WVRC cited such cases in its Opposition to Chemours' Motion to Stay, and LHWA, having fully incorporated WVRC's Opposition into its own, and having stated that WVRC "accurately and concisely capture[d] the law," acknowledged the mootness and res judicata potentialities here. ECF No. 209 at 2; ECF No. 210 at 1.

The Court likewise has agreed that "the executive branch's intervention has always been a possibility." ECF No. 216 at 4. "[A]lthough it may not be an ideal outcome for" LHWA, "the Clean Water Act does foresee and indeed favors government action." *Id.* After all, "Congress' intent [is] that citizen suits [will] supplement, rather than supplant, government action." *Sierra Club v. ICG E., LLC*, 833 F. Supp. 2d 571, 581 (N.D.W. Va. 2011).

The United States, West Virginia, and WVDEP lodged the Consent Decree and its Appendices with the Court on June 24, 2026. *See* ECF No. 2, *United States of America et al. v.*

*The Chemours Co. et al.*, No. 2:26-cv-00418 (S.D.W. Va. 2026). Pursuant to applicable regulations, the Consent Decree and Appendices have undergone a notice-and-comment period, during which the United States received comments from the general public. *See* 28 C.F.R. § 50.7 (providing 30 days before entry of a consent decree to allow "any written comments, views or allegations relating to the proposed judgment" to be received and considered). That comment period has now passed, and DOJ is currently reviewing and responding to the feedback. When the federal and state governments are ready, they will move for entry of the Consent Decree. Thereafter, the Court in Case No. 2:26-cv-00418 will evaluate whether to enter the Consent Decree. Should the Consent Decree be entered, either in its current form or a revised version, Chemours will thereafter seek all appropriate relief in this citizen suit.

Although the Settlement Agreement is solely between WVRC and Chemours, it flags what is likely to come in this citizen suit. The Agreement states as follows:

> [T]he United States and Chemours have reached a settlement in principle in *United States v. The Chemours Company* . . . which settles the same claims under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, asserted against Chemours by WVRC in *West Virginia Rivers Coalition, Inc. v. The Chemours Company FC, LLC*, No. 2:24-cv-00701 (S.D.W. Va. 2024).
> . . .
> [T]he settlement between the United States and Chemours, and the accompanying Consent Decree, impose civil penalties and injunctive relief against Chemours for all of the same alleged Clean Water Act violations asserted by WVRC in its Citizen Suit.

Ex. 1, Settlement Agreement at 1. Notably, the list of alleged violations accompanying WVRC's Complaint, *see* ECF No. 1-1, is identical to the list of violations alleged by LHWA. LHWA's list of alleged violations is a simple cut-and-paste copy of WVRC's list. *Compare* ECF No. 1-1 *with* ECF No. 86 at 16–22. Moreover, the Complaint filed by the United States and resolved by the Consent Decree includes and resolves all of the same claims as the Complaints of LHWA and WVRC.

## CONCLUSION

Overall, the government enforcement action, the Consent Decree, and the relevant terms of the Settlement Agreement are likely to have determinative effects on this citizen suit and LHWA's claims. Those effects stem from principles of mootness and claim preclusion. The exact nature of those determinative effects, however, will depend on the final language of the Consent Decree that is entered by the Court in Case No. 2:26-cv-00418. Regardless of the ultimate disposition of this matter, Chemours will continue to operate existing abatement projects at Washington Works and will continue to advance the large-scale abatement projects in accordance with the Administrative Order on Consent, ECF No. 7-18. If the Consent Decree and its Appendices are finalized and entered, Chemours will thereafter retain the responsibility to pursue abatement projects at Washington Works in accordance with the Consent Decree and Appendix F.

**THE CHEMOURS COMPANY FC, LLC**

**By: SPILMAN THOMAS & BATTLE, PLLC**
*/s/ Joseph A. Ford*

David L. Yaussy (WV State Bar No. 4156)
Niall A. Paul (WV State Bar No. 5622)
Clifford F. Kinney, Jr. (WV State Bar No. 6220)
Joseph A. Ford (WV State Bar No. 12984)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East
Charleston, WV 25301
(304) 340-3800
(304) 340-3801 (*facsimile*)
dyaussy@spilmanlaw.com
npaul@spilmanlaw.com
ckinney@spilmanlaw.com
jford@spilmanlaw.com

James A. Walls (WV State Bar No. 5175)
SPILMAN THOMAS & BATTLE, PLLC
48 Donley Street, Suite 800
Morgantown, WV 26501
(304) 291-7920
(304) 291-7979 (*facsimile*)
jwalls@spilmanlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**WEST VIRGINIA RIVERS COALITION, INC., and**
**LITTLE HOCKING WATER ASSOCIATION, INC.**

**Plaintiffs,**

**v.** **CIVIL ACTION NO. 2:24-cv-00701**

**THE CHEMOURS COMPANY FC, LLC,**

**Defendant.**

**CERTIFICATE OF SERVICE**

I, Joseph A. Ford, hereby certify that on August 17, 2026, I electronically filed the foregoing "**Defendant's Brief in Response to the Court's Order, ECF No. 224**" via the Court's CM/ECF electronic filing system, which will send notification to all e-filing participants in this action.

*/s/ Joseph A. Ford*
Joseph A. Ford (WV State Bar No. 12984)